**Gerald E. PEDDICORD, Appellant,**

v.

**Jean PEDDICORD, Appellee.**

**No. 7684.**

Court of Civil Appeals of Texas, Beaumont.

March 27, 1975.

Rehearing Denied April 17, 1975.

Brown & Hill, Sherman, for appellant.

Robert C. Bush & Associates, Sherman, for appellee.

STEPHENSON, Justice.

This is an appeal from a summary judgment granted to plaintiff. The parties will be referred to here as they were in the trial court.

Plaintiff, Jean Peddicord, brought this suit against her former husband, Gerald Peddicord. The record shows they executed a property settlement agreement December 2, 1970, and a divorce was granted December 7, 1970. In the divorce decree the recitation is made that the agreement is approved by the court, incorporated into the judgment by reference, and was found to be contractual in nature. The agreement provided that defendant should pay plaintiff $350 on the first and fifteenth of each month, beginning immediately after the granting of this divorce, until January 1, 1981, at which time the payment would be reducd to $250. The payments would also be reduced to $250 each if defendant was unemployed. The payments were to be continued as long as plaintiff should live or until she remarried. Defendant made the payment as provided until November 1973, since which time no payments have been made.

Defendant's sole point of error is that the trial court erred in granting plaintiff's motion for summary judgment in that the trial court failed to allow defendant to assert contractual defenses to the property settlement agreement. Defendant pleadings, in essence were: lack of consideration; failure of consideration; duress in

executing the agreement; lack of mental capacity to contract.

Plaintiff's motion for summary judgment was based upon admission made by defendant in response to plaintiff's request for admissions. Defendant made these admissions: He was the manager of the Tanglewood Hills Country Club, on Lake Texoma, at the time of execution of the settlement agreement, divorce, and at present. That he had made no payments since November 1973. That he had complied with the terms of such agreement from the date of the divorce until November 1973, with one exception. That he was represented by an attorney at the time of making the agreement and at the time the divorce decree was entered.

The trial court properly refused to allow defendant to interpose contractual defenses to the property settlement agreement which was incorporated into the divorce judgment. The settlement agreement became a part of the judgment of the trial court, and to allow defendant to raise contractual defenses would be to allow a collateral attack upon that judgment.

As far as we have been able to ascertain, this is the first case passing directly upon that point. In Lampkin v. Lampkin, 480 S.W.2d 35 (Tex.Civ.App.—El Paso 1972, no writ), the former wife brought suit to collect delinquent payments under a property settlement agreement incident to a divorce. Defendant plead lack of consideration and coercion. The trial court granted the wife's motion for summary judgment which was affirmed by the Court of Civil Appeals. However, the appellate court found against the husband as a matter of law as to the defenses plead.

In Akin v. Akin, 417 S.W.2d 882 (Tex. Civ.App.—Austin 1967, no writ), the wife brought suit to collect delinquent child support payments under an agreement made by the parties and which was incorporated into the divorce decree. The husband plead failure of consideration. The trial court granted the wife's motion for summary judgment and the Court of Civil Appeals affirmed with this statement: "If appellant has any remedy in the premises it is by direct attack on the divorce judgment in the court which rendered it."

In Miller v. Miller, 463 S.W.2d 477 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.), the former wife brought suit to collect unpaid payments due under a written property settlement which was approved by the court. The husband plead no consideration, inadequate consideration, and unjust enrichment. The order granting the wife's motion for summary judgment was affirmed by the Court of Civil Appeals by a finding that there were no material issues of fact. See also Chandler v. Chandler, 323 S.W.2d 377 (Tex.Civ.App.—San Antonio 1959, writ dism'd).

In Ex Parte Jones, 163 Tex. 513, 358 S. W.2d 370, 375–376 (1962), we find some support for the action we are taking in the case before us. There a trial court held the husband in contempt of court for failure to build the wife a house as agreed in a property settlement incorporated into the divorce decree. The Supreme Court granted the husband's petition for a habeas corpus with this statement: "The contractual provisions in the settlement decree or agreed judgment are neither subject to modification nor can they be enforced by contempt proceedings."

We do not decide this case by passing upon the contractual defenses raised by defendant, and holding they have no merit. We hold that the judgment of the trial court entered December 7, 1970, became a final judgment when there was no appeal. Upon a suit to enforce the terms of the settlement agreement approved in such judgment, the sanctity and finality of that judgment cannot be collaterally attacked. Therefore, no issues of fact were raised by the defendant through his pleadings, and the trial court properly granted plaintiff's motion for summary judgment.

Affirmed.

KEITH, Justice (concurring).

I express my complete concurrence in the well-reasoned opinion of Justice Stephenson. The result reached is sound and compatible with the authorities considered. However, I am perturbed by the unanswered questions which still exist in this area of procedural law notwithstanding our holding.

I have experienced difficulty in drawing a definite distinction between two seemingly conflicting rules which emerge from the myriad of decisions on the subject. There are many decisions which support the rule announced in Pollard v. Steffens, 161 Tex. 594, 343 S.W.2d 234, 239 (1961), where the Court said: "[A] consent judgment has the same degree of finality and binding force as does one rendered by the court at the conclusion of an adversary proceeding." Indeed, quoting from a text quoted earlier in Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (1956), the Court held that such a consent judgment has neither less nor greater force or effect than one rendered after protracted litigation, " 'except to the extent that the consent excuses error and operates to end all controversy between the parties.' " See also, Schwartz v. Jefferson, 18 Tex.Sup.Ct.J. 261, 264 (March 19, 1975).

These cases fit readily into the general concept of finality of judgments. Judge Smedley in Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909, 914 (1944), expressed the rule in these words:

"Final judgment is intended to be the end of controversy and trial. * * *

Otherwise, a final adjudication would become the starting point for new litigation, for reexamination and for second decision of the question decided in the former suit."

See also, Carter v. Nichols, 349 S.W.2d 264, 265 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.).

But, in consent judgment cases, and particularly those relating to child support orders resting upon contracts incorporated into the decree, we find confusing language which seemingly limits or restricts the generality of the foregoing line of cases. This language apparently first entered our jurisprudence in Peterman v. Peterman, 55 S.W.2d 1108, 1110 (Tex.Civ.App. —Eastland 1933, no writ), in quoting from 34 C.J., Judgments § 337 at 133 (1924) [the substance of which now appears in 49 C.J.S. Judgments § 178 at 316 (1947)]: "It [the consent judgment] has the same force and effect as any other judgment, *and in the absence of fraud or mistake* is valid and binding, as such, as between the parties thereto and their privies, * * *." (emphasis supplied)[1]

The first phrase in the quotation from Corpus Juris is now firmly embedded in the jurisprudence of Texas. See, e. g., Pollard v. Steffens, supra (343 S.W.2d at 239); Wagner v. Warnasch, supra (295 S.W.2d at 893).

However, when we come to consider the italicized words, we encounter confusion because of another rule epitomized by this quotation from Hutchings v. Bates, 406 S.

---

1. The substance of the "fraud or mistake" quotation from Corpus Juris has found its way into many decisions of our courts, either directly or by paraphrasing. I cite only a few instances. Beam v. Southwestern Bell Tel. Co., 164 S.W.2d 412, 415 (Tex.Civ.App.— Waco 1942, writ ref'd w. o. m.) [quoting from *Peterman* but not from Corpus Juris]; Plumly v. Plumly, 210 S.W.2d 177, 179 (Tex.Civ. App.—San Antonio 1948, writ dism.) [cited with approval in Ex parte Jones, 163 Tex. 513, 358 S.W.2d 370, 375 (1962), upon an-

other point]; Brady v. Hyman, 230 S.W. 2d 342, 344 (Tex.Civ.App.—San Antonio 1950, no writ); Routon v. Phillips, 246 S. W.2d 223, 225 (Tex.Civ.App.—Fort Worth 1952, writ ref'd n. r. e.); Akin v. Akin, 417 S.W.2d 882, 885 (Tex.Civ.App.—Austin 1967, no writ).

Several cases have used the words "fraud, *accident,* or mistake." See Morris v. Morris, 406 S.W.2d 550, 551 (Tex.Civ.App.—Amarillo 1966, no writ); *Plumly,* supra, and *Brady,* supra.

W.2d 419, 420 (Tex.1966), which also has solid support in the Texas cases:

"In a case like the present, however, where the duty to make support payments arises from an agreement of the parties [which has been incorporated in the divorce decree], their rights and obligations in that respect are governed largely by the rules relating to contracts."

Thus, our courts are required: (a) to determine the rights of the parties under the rules "relating to contracts"; and (b) to hold that consent judgments are just like other judgments "in the absence of fraud or mistake." The application of these two rules suggests the questions which I now state: (1) When, where, and in what kind of a proceeding may a party assert fraud, mistake, or other contractual defense? and (2) When does the court use the "contract interpretation" rule?

Since the so-called consent judgments are final judgments in the true sense of the word, such a judgment is not subject to a collateral attack but may be attacked only in a direct proceeding. Professor Gus Hodges has stated the thesis in this manner: "A direct attack on a judgment is an attempt to change it in a proceeding brought for that specific purpose, such as an appeal or bill of review. A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." G. Hodges, "Collateral Attacks on Judgments," 41 Tex.L.Rev. 163 (1962).

Each of the defenses which defendant sought to interpose in the case at bar was in the nature of a collateral attack upon a final judgment. Such defenses could be urged, if at all, only in a direct attack upon such judgment, i. e., by direct appeal [and the time had long since expired within which to appeal] or by a bill of review. We need not determine the effectiveness of such defenses because of the almost impossible burdens attendant upon the availability of the bill of review procedure.[2]

Thus, the "fraud or mistake" limitation upon the finality of such consent judgments [see cases cited in footnote 1] is confined to situations wherein a direct attack is made upon such judgments. Subject to all other limitations upon the bill of review procedure [see cases cited in footnote 2], the defenses sought to be interposed in this case may be urged *only* in such an action. *Hodges,* supra (41 Tex.L. Rev. at 180 et seq.). Until set aside in a direct proceeding, such final judgment is conclusive as to all issues therein determined under the doctrine of res judicata. Kolb v. Kolb, 479 S.W.2d 81, 83 (Tex.Civ. App.—Dallas 1972, no writ).

Two instances wherein Courts of Civil Appeals have met and considered the defenses which amounted, in law, to collateral attacks upon final judgments are: Lampkin v. Lampkin, 480 S.W.2d 35 (Tex.Civ.App.—El Paso 1972, no writ), and Lee v. Lee, 509 S.W.2d 922 (Tex.Civ. App.—Beaumont 1974, writ ref'd n. r. e.), wherein I spoke for this court. The defenses interposed in each of the cited cases were no more than collateral attacks upon final judgments and should not have been considered by the court. However, in each instance, the court reached the correct result.

Having placed the two rules in proper perspective, I find no conflict in the application of each to the proper type action. The "fraud and mistake" and contractual defense line of cases refer to direct attacks; the "contract interpretation" doc-

2. See, e. g., Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996 (1950); Hanks v. Rosser, 378 S.W.2d 31 (Tex.1964); Gracey v. West, 422 S.W.2d 913 (Tex.1968); Texas Mach. & Equip. Co. v. Gordon Knox Oil & Exp. Co., 442 S.W.2d 315 (Tex.1969). This series presents the usual attempt to set aside a default judgment. But, the general rules are also applicable to other situations. See Petro-Chemical Transport, Inc. v. Carroll, 514 S.W.2d 240, 243 (Tex.1974).

trine applies in subsequent proceedings between the parties and their privies, not to alter the judgment but to determine and enforce the order entered.

With these remarks, I now reaffirm my concurrence in this case.