Argued June 27, affirmed September 4, 1979

In The Matter Of The Marriage Of
QUENZER,
*Appellant - Cross-Respondent,*
*and*
QUENZER,
*Respondent - Cross-Appellant.*
(No. 38791, CA 11777)

599 P2d 1217

[4]

Valerie J. Vollmar, Salem, argued the cause for appellant - cross-respondent. With her on the briefs was Clark, Marsh & Lindauer, Salem.

Therese Engelmann, Eugene, argued the cause and filed the briefs for respondent - cross-appellant.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Husband and wife were divorced in Texas in December 1975. Wife was awarded custody of their five-year-old daughter, and the divorce decree allowed husband periodic visitation rights. Husband was ordered to pay $300 monthly child support. Prior to the divorce, husband and wife entered into a property settlement agreement which provided, among other things, for husband to pay wife spousal support monthly. The agreement further provided that, in the event of a dispute arising over the agreement, wife could bring enforcement proceedings in Harris County, Texas, or in "any state or jurisdiction where the Husband shall be residing at the time of any alleged breach." The divorce decree provided that the property settlement agreement was.

> "* * * in all things approved and made a part of this Divorce Decree, and the parties are ordered to do such things as may be necessary to carry into effect such Property Settlement Agreement."[1]

Shortly after the divorce, wife and daughter left Texas. The child's visits with husband were fewer and more irregular than the decree provided, and he had ongoing difficulties in ascertaining wife's and the daughter's whereabouts. After one of the child's visits to Texas, husband refused to return her to wife. He instituted a change of custody proceeding in Texas. Wife then sought a writ of habeas corpus, and the Texas court directed husband to return the child to wife. He did so. Thereafter, husband was unable to locate wife or see the child for more than a year. Wife and daughter now reside in Oregon.

In August 1977, husband petitioned the Lincoln County circuit court to enforce his visitation rights under the Texas decree, pursuant to the Uniform Child Custody Jurisdiction Act (ORS 109.700 to

---

[1] The parties agree that one of the effects of this language is to order husband, by force of the decree and independently of the agreement, to pay spousal support to wife. As will be discussed below, husband contends that the Texas court had no power to make such an order.

109.930). Wife cross-petitioned, seeking *inter alia* that the Texas decree be modified to require husband to post a bond assuring the child's return to wife after visitation periods; that wife be awarded arrearages in child and spousal support; that the monthly child support payments be increased from $300 as provided by the Texas decree to $500; and that wife be awarded attorney's fees and costs. Husband then filed a motion for change of custody. The trial court denied the motion for change of custody; held wife in contempt for not complying with the visitation provisions of the Texas decree; modified those provisions in light of the distance between the parties' places of residence; required husband to post a $1,000 bond assuring the child's return after visits; gave wife judgment for the arrearages in child and spousal support; held husband in contempt for noncompliance with the child and spousal support requirements; denied the requested increase in child support; and denied attorney's fees and costs. Husband appeals from the trial court's order that he pay arrearages in spousal support and from the related contempt finding. Wife cross-appeals from the contempt finding against her, from the denial of increased child support, and from the denial of attorney's fees and costs. We affirm.

Husband makes two basic arguments: first, that the Oregon court had no jurisdiction to enforce the Texas decree's spousal support award; and second, that that award is not enforceable because Texas law prohibits awards of alimony and the provision in the divorce decree purporting to make such an award is void.

■ Husband advances three points in support of his jurisdictional argument. He contends first that the Oregon court did not have subject matter jurisdiction over spousal support in this proceeding initiated under the Uniform Child Custody Jurisdiction Act. It is of course correct that the Act does not in itself provide for the enforcement of spousal support orders. *Cf.,* ORS 109.710(2). However, nothing in the Act suggests that a child custody proceeding brought under it cannot be

[6]

consolidated with other matters. To the contrary, ORS 109.710(3) provides:

> " 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings."

ORS 3.260(2)(e) vests Oregon's circuit courts with jurisdiction over:

> "Any suit or civil proceeding involving custody or other disposition of a child or the support thereof or the support of a spouse, including enforcement of the Uniform Reciprocal Enforcement of Support Act and enforcement of out-of-state or foreign decrees on domestic relations."

Husband next argues that, in order to secure enforcement of the Texas decree, wife was required to proceed under ORS ch 24, relating to registration and enforcement of foreign judgments. That contention was rejected in *Walker v. Walker,* 26 Or App 701, 554 P2d 591, *rev den* (1976). Although husband does not raise the question, we also consider whether the trial court had jurisdiction to enforce a spousal support obligation from another state in light of the fact wife did not follow the procedures of the Reciprocal Enforcement of Support Act (ORS ch 110). We conclude that wife's proceeding under ORS ch 110 was not a prerequisite to the court's having jurisdiction. ORS 110.031 provides that the remedies of the chapter are "in addition to and not in substitution for any other remedies." Moreover, husband was not prejudiced by the omission of any procedures which would have been applicable had wife proceeded under ORS ch 110.[2]

Husband's final jurisdictional contention is that the property settlement agreement provides for exclusive venue in Harris County, Texas, over suits for enforcement of the agreement. Arguably, the issue here is not

---

[2] For example, all of the information ORS 110.101 requires petitions under ORS ch 110 to contain was presented to the trial court, and husband had a full opportunity to respond.

the enforcement of the agreement but the enforcement of a decree which incorporates the requirements of the agreement. In any event, we would not give effect to the exclusive venue provision of the agreement even if the enforcement of the agreement rather than the decree were before us. In *Reeves v. Chem Industrial Co.,* 262 Or 95, 495 P2d 729 (1972), the court held that an exclusive venue provision in a contract will be given effect unless the provision is "unfair or enforcement would be unreasonable." 262 Or at 101. Here, husband, a Texas resident, came to Oregon to initiate this proceeding. The record discloses that husband is substantially the more affluent of the two parties. It would be unreasonable to require wife, an Oregon resident, to bring a proceeding in Texas against a party from that state who has initiated a related proceeding against wife in an Oregon court.

■ We conclude that the circuit court had jurisdiction to enforce the spousal support order, and we turn to the question of whether that order is enforceable. Husband argues that the spousal support provision of the Texas decree is against the public policy of and void in that state and therefore cannot be enforced either there or here. Foreign judgments are enforceable in Oregon only if valid in the state of origin. *Morphet v. Morphet,* 263 Or 311, 502 P2d 255 (1972); *Hatch v. Hatch,* 247 Or 588, 431 P2d 832 (1967).

■ Under Texas law, courts do not have authority to *order* the payment of alimony. Texas law does permit the parties to a divorce to provide by contract for the payment of spousal support. The court granting a divorce in Texas can "approve" such a contract, but the source of any right to spousal support is the contract rather than the decree approving it. *See Francis v. Francis,* 412 SW2d 29 (Tex 1967). Here, the parties entered into an agreement providing for spousal support payments. The decree states that "the parties are ordered to do such things as may be necessary to carry [the agreement] into effect." Husband contends that the decree thereby orders him to

pay alimony and is to that extent void under Texas law. While husband acknowledges that wife could bring a proceeding in Texas to enforce the *contractual* requirement that he pay spousal support, he argues that the requirement cannot be enforced as a judgment. *Cf., Firestone v. Firestone,* 567 SW2d 889 (Tex Civ App 1978). In other words, husband's position is that the Texas decree, insofar as it directs him to pay alimony, is wholly invalid and is not entitled to full faith and credit in this state.

■ Wife does not dispute that Texas law does not permit courts to order the payment of alimony. However, she argues that the Texas court had jurisdiction over the subject matter, and that, although the decree may be erroneous, husband did not appeal from the decree which is now final and cannot be collaterally attacked in this proceeding. She cites numerous Texas cases holding that divorce decrees, once final, are not subject to collateral attack in subsequent proceedings. Husband notes that most of the cases wife cites involve such matters as division of marital assets and child support which, unlike spousal support, are not invalid *per se* under the law of Texas. He argues that the cases on which wife relies are accordingly inapposite.

We agree with wife. In *Peddicord v. Peddicord,* 522 SW2d 266 (Tex Civ App 1975), the husband appealed from a trial court's judgment for the wife in an action to enforce a property settlement agreement which had been incorporated into a divorce decree and which the Texas Court of Civil Appeals described as providing:

"\* \* \* [D]efendant should pay plaintiff $350 on the first and fifteenth of each month, beginning immediately after the granting of this divorce, until January 1, 1981, at which time the payment would be reduced to $250. The payments would also be reduced to $250 each if defendant was unemployed. The payments were to be continued as long as plaintiff should live or until she remarried. \* \* \*" 522 SW2d at 266.

[9]

Although the opinion of the court in *Peddicord* does not state whether the payments were intended as spousal support, the quoted description indicates that they would be so characterized under the law of most jurisdictions. *See, e.g., Prime v. Prime,* 172 Or 34, 51, 139 P2d 550 (1943), which expresses the general rule that the right to alimony terminates upon the death of either spouse, absent a contrary intention in a decree or settlement agreement. *See also State ex rel Carrier v. Carrier,* 40 Or App 407, 410, 595 P2d 827 (1979), and authorities there cited. The divorce decree in *Peddicord* had become final. In the wife's enforcement action, the husband sought to raise contractual defenses. The Texas appellate court held:

> "The trial court properly refused to allow defendant to interpose contractual defenses to the property settlement agreement which was incorporated into the divorce judgment. The settlement agreement became a part of the judgment of the trial court, and to allow defendant to raise contractual defenses would be to allow a collateral attack upon that judgment." 522 SW2d at 267.

In light of the foregoing, we affirm the portion of the trial court's order which enforces husband's obligation under the divorce decree to pay spousal support.

■ Husband's only basis for challenging the contempt finding against him is his argument that the provision of the Texas decree he violated is unenforceable. Because we conclude that that provision is enforceable, we also affirm the finding of contempt.

■ During the proceedings on appeal, husband argued that the trial court erred in requiring him to post the $1,000 bond to assure the return of the child after visitations. *See Patterson and Patterson,* 39 Or App 423, 592 P2d 576, *remanded on other grounds* 286 Or 631, 596 P2d 554, *opinion on remand* 41 Or App 97, 597 P2d 1262 (1979). Husband's notice of appeal did not go to the entire order. Rather, it specified a portion of the order other than that which included the requirement in question. Accordingly, we do not reach

[10]

it. *See Stahl v. Krasowski,* 281 Or 33, 573 P2d 309 (1978).

■   The first point wife raises in her cross-appeal is that the trial court erred in holding her in contempt for failing to comply with the visitation provisions of the divorce decree. She argues that she made repeated efforts to provide husband with his visitation rights, and that it was impossible for her to comply with the decree, apparently because of husband's noncooperation and because of the great distance between husband's place of residence and the various places wife has been since the time of the divorce. *See State ex rel Fry v. Fry,* 28 Or App 403, 559 P2d 1293 (1977). However, there was ample evidence that wife deliberately secreted herself and the child, that she changed locations, and that she concealed her whereabouts and evaded contact. The finding of contempt was not error.

■   Wife next argues that the court erred in refusing the motion for increased child support. At the time of the divorce, husband, a radiologist, was earning $72,000 annually. The record indicates that he is now earning approximately $80,000 a year. When the parties were divorced, wife was studying for an advanced degree. Although she has most recently been employed as a substitute teacher, earning approximately $500 a month, she also recently held a position with the Lincoln County School District which paid an annual salary of $19,000. She voluntarily resigned from that position. Since the divorce, husband has remarried and has adopted the daughter of his new wife.

Wife argues that husband's failure to pay spousal support and the costs of this and earlier litigation have reduced her resources for caring for the child. However, the trial court has ordered and we affirm the order that husband pay arrearages in spousal support. The litigation which wife contends resulted in unforeseen costs has been due as much to the conduct of wife as husband, and has of course also resulted in costs to

[11]

husband. The trial court was correct in finding no change in circumstances warranting an increase in child support.

Wife contends finally that the trial court erred in denying her request for attorney's fees and costs. We agree with the trial court that both parties have failed to comply with the provisions of the divorce decree and that both "have been using [the daughter] in a tug-of-war." Both are responsible for the series of court proceedings and for the events leading to those proceedings. We conclude that an award of attorney's fees or costs to either would be inappropriate.

Affirmed. No costs to either party.