Ex parte Rocky CONNER.

No. 09–87–233 CV.

Court of Appeals of Texas, Beaumont.

April 7, 1988.

Bruce W. Cobb, Beaumont, for appellant.

Terry Doyle, Port Arthur, for appellee.

## OPINION

DIES, Chief Justice.

On the 16th day of October, 1987, Respondent was held in contempt for failure to pay child support and placed on probation. The decree of probation was the re-

sult of an agreement between the attorneys involved.

Thereafter, the Respondent petitioned this court for a writ of habeas corpus alleging that, although the decree of contempt placed him on probation, it illegally restrained his liberty and was void because no statement of facts or record of the proceedings was made by the court reporter as required by *TEX.FAM.CODE ANN. sec. 14.32(b)* (Vernon 1986).

By opinion dated February 18, 1988, 746 S.W.2d 527, we held that the decree of contempt, though probated, did restrain his liberty and we abated the appeal with instruction to the trial court to conduct a hearing to determine if a record of the proceedings granting the contempt decree had been made.

We have received a record of the hearing requested, and it shows that no record or statement of facts was made. The section of the Family Code above cited reads:

"(b) Court Reporter. Except when entry of an order is agreed on by the parties, no enforcement order under this subchapter shall be entered unless a record of the proceedings is made by a court reporter."

Since such an order can lead to incarceration, it is in a very real sense quasi-criminal in nature and we hold that such agreement must be made by the *parties* themselves, and not merely their attorneys. We have no such showing in our case. We, therefore, on the authority cited above, grant Respondent's writ of habeas corpus and vacate the decree of contempt.

Writ granted.

BROOKSHIRE, Justice, dissenting.

With respect, this dissent is filed. The court's opinion recites that the "decree of probation" was the result of an agreement between the attorneys involved. That is correct but, as I analyze this interesting record, I think much more was involved. Here is why I think so.

The "decree of probation" was, in fact, a Decree of Contempt, now being in the record before us. It was signed and apparently approved without limitation or qualification by the attorney of record for the Respondent. Rocky Conner, the Respondent, actually signed the quoted statement below, which is immediately following the Judge's signature on the Decree of Contempt:

"I have received a copy of this order and *fully understand each of the conditions imposed, and I understand that this probation could be revoked for any violation. I further understand that in the event I fail to make child support payments as ordered above, a warrant will be issued for my arrest.*

/S/ "Rocky Conner
"ROCKY CONNER, RESPONDENT
S/ "*Bruce W. Cobb*
"BRUCE W. COBB,
"ATTORNEY FOR RESPONDENT"
(Emphasis added)

Although Rocky Conner did not use the words "I agree", it seems a fair interpretation of his understanding that he, at least, acquiesced in the Decree of Contempt.

In the early paragraphs of the Decree of Contempt, the Court found that the Respondent was guilty of contempt in that he had willfully failed and refused to pay support, as theretofore ordered, in the amount of $6,179.54. Then, the same decree set his punishment for such contempt. However, the execution of the order of commitment to jail was suspended and the Respondent was placed on probation for a period of five years. The rationale and reasoning for the court's holding is that, although the Decree of Contempt placed Conner on probation, it, nevertheless, *illegally restrained him of his liberty* and "was void because no statement of facts or record of the proceedings were made by the court reporter as required by *TEX.FAM.CODE ANN. Sec. 14.32(b)* (Vernon 1986)."

By a prior opinion, dated February 18, 1988, this court unanimously gave instructions to the trial court to conduct a hearing to determine if a record of the proceedings, resulting in the contempt decree, had been made. We have now received a record of the hearing. Although no formal State-

ment of Facts of verbal testimony was made, I respectfully maintain that a record was made that was more meaningful, more practical and more consistent with the basic purposes of obtaining compliance with child support orders.

We find this in the colloquy between the attorneys and the court:

"MR. DOYLE: Your Honor, I think— If my memory serves me correct, there was not. What occurred, Your Honor, was that we had a motion for contempt *and we entered into an agreed judgment wherein the accused party agreed to go on probation and pay a certain amount of money over and above ordinary child support payments to catch up on the arrearage; and that instrument was signed and agreed to by all parties.*"

. . . .

"THE COURT: The Court has a copy of the decree of contempt. It will take judicial knowledge of it.

"And what—What representation was made to the Court and was it made—was the other party represented by an attorney?

"MR. DOYLE: Both parties—This gentleman was here with his client, and we settled the matter sitting in the jury-room immediately outside the Court. And we came in and advised the Court that we had resolved the matters in controversy *and presented the Court with an agreed judgment....*" (Emphasis added)

Later in the record, we find this statement from Mr. Cobb:

"MR. COBB: May I make a statement?

"Basically, the decree here was signed by my client and was signed by myself. We—*There is a docket entry that the matter was settled.* I will *concede that it was settled*, but my understanding of the matter was that very possibly my man would have gone to jail had we had a hearing rather than in lieu of taking a probation offer.

"THE COURT: How do you know that, Mr. Wills (phonetic), unless you had the hearing before the Court?

"MR. COBB: I wouldn't know, Your Honor.

"THE COURT: Did the Court in any way coerce you and tell you your client was going to go to jail?

"MR. COBB: I don't—I don't believe I can say that.

"THE COURT: Sir?

"MR. COBB: I don't know.

"MR. DOYLE: Judge, I don't think we even talked to you before we reached the settlement.

"THE COURT: Well, I just wanted to be sure that the record is clear with respect to it. Mr. Wills (phonetic) claims that, for one reason or another, he feels coerced in having made the agreement.

"MR. COBB: Your Honor, I just felt *it was better that my man go on probation* rather than having him to be—having to run the risk of having to go to jail.

"THE COURT: And *now after you have agreed to that and represented to the Court that this was true, then you come back to the Court and then you file a writ.* (Emphasis added)

Further, in the record we find the unequivocal statement, made by Respondent's able attorney:

"MR. COBB: ... We accepted to go on probation."

To my way of thinking, the above makes it glaringly clear that both an agreement and a settlement were reached; I would so hold. I would construe *TEX.FAM.CODE ANN. Sec. 14.32* (Vernon 1986 and Vernon Supp.1988), that the Decree of Contempt and the provision for probation were agreed on by the parties.

As I read the record, it is proved that Rocky Conner was present in court and that he at least acquiesced in the agreements and settlements made by his attorney of record and he acknowledged, unequivocally, that he understood every provision of the Decree of Contempt.

A careful reading of the record leads me to the conclusion that Respondent left the

trial court with the impression an agreement had been reached. The Relator mother was trying to collect some portion of the $6,179.54 in unpaid back child support. Mr. Doyle speaks:

"MR. DOYLE: Your Honor, not from the position of the moving party herein. Your Honor, the position of the moving party is that we had a set of circumstances where the *responding party was way behind in child support payments. And after two efforts to get him served, he wouldn't even accept service after he had an attorney in the case. We finally got him before this Court and his lawyer and I worked out an agreed judgment which was appealed.*

"I would like the record to reflect that whatever the out come [sic] of this and the appelate [sic] procedure, I will be back and we will be back to get this gentleman before this Court in whatever fashion we have to do to see that he properly supports his children." (Emphasis added)

My basic query is, how can the Respondent be in court, be represented by a competent and able attorney, (which attorney, without limitation, signs the Decree of Contempt, announces to the court unequivocally that the decree of contempt was signed and entered by way of an agreement and settlement) and Respondent unequivocally states that he further understands each condition imposed by the Judge's contempt decree and Respondent further understands that, in the event he fails to make child support payments as ordered, "a warrant will be issued for my arrest;" yet, the Respondent later takes the position that the entry of that Decree of Contempt was not agreed to; my query is, how can that be logically sound? I say the Decree of Contempt was arrived at by agreement. This, then, makes unnecessary the taking of detailed testimony in question and answer form and *TEX.FAM.CODE ANN. Sec. 14.32(b)* (Vernon 1986) has been complied with.

But there is something more basic here that really needs to be addressed. In a number of cases in the past, the parents who have failed to support their children have escaped the enforcement orders of the trial judge contending that they were indigent or had no attorney to represent them. In this case, absolutely no contention of indigency was proffered and the Respondent had able counsel at all times concerning the proceedings involving the Decree of Contempt, signed and dated October 29, 1987; nevertheless, that decree is declared here, today, to be void.

What about the obvious necessity of the child or children of this unfortunate, divorced couple having to eat every day, having to have some place to live every day, some type of shelter, having to have some clothes to wear every day, and having other, necessary, expenses? In the many proceedings before this court involving child support, I cannot recollect a decision of the court, in its written opinion, that addresses the problem of the absolute necessities of life that the minor children have due to them under the law.

The Respondent and his attorney say that Judge Robert Walker's Decree of Contempt is void and should be vacated. They have prevailed. But the Decree of Contempt is not void. It is not even voidable. The court had jurisdiction of the parties and the subject matter. The record clearly shows that the responding party, Rocky Conner, was $6,179.54 in arrears in his child support payments.

Further, when the Respondent was before the trial court, he and his lawyer and Mr. Doyle worked out an agreed judgment; nevertheless, that agreed Decree of Contempt has been collaterally attacked by habeas corpus and today held to be void. The Decree of Contempt attacked was not void; it was valid in my opinion. Since the court holds otherwise, I must, and do, respectfully dissent.

I also vigorously dissent, now that we have the record before us, from the holding of the court in a prior opinion dated February 18, 1988, involving the same respondent wherein the court held "granting probation pursuant to *TEX.FAM.CODE ANN. Sec. 14.40(e)* (Vernon 1986) constitutes a sufficient 'restraint' on relator's liberty to warrant a writ." I recant from that hold-

ing since Conner agreed to it. Further, it has been clearly shown by the record that Relator, Conner, has never been placed in jail. He has not spent one minute in jail.

It is well established that some type of incarceration or some character of restraint of Relator's liberty must exist as a predicate to obtain habeas corpus relief. *Ex Parte Beamer*, 116 Tex. 39, 285 S.W. 255 (1926); *Ex Parte Calhoun*, 127 Tex. 54, 91 S.W.2d 1047 (1936). These cases forcefully decided that some restraint was required.

Rocky Conner has not been subjected to personal restraint which precludes his freedom of action or movement. He, today, possesses personal freedom of action and he understood and tacitly acquiesced and agreed to the order, according to the record before us. Therefore, habeas corpus will not lie. *See Ex Parte Williams*, 690 S.W.2d 243 (Tex.1985).

The trial court's contempt order was far from being void. In fact, it was regular and is valid. There has been a record made and it was brought forward. The Relator in this appellate court, Conner[1], had an able, experienced attorney with him to advise him the proceedings below. This attorney is well-versed, skilled and learned in child support and contempt matters.

The record reflects that Conner fully understood and, I say, either agreed or acquiesced in the signing and rendering of the challenged order. To grant the writ and release the Relator, under the court's construction of the statute, *TEX.FAM. CODE ANN. Sec. 14.32* (Vernon 1986 and Vernon Supp.1988), in my opinion, is not only a very technical and strained construction, but that interpretation *involves practical considerations of important public policy.*

The record in this case clearly shows that several attempts were made to obtain service on Conner. There were two unsuccessful attempts at service. In the meantime, the child or children were without support for their necessities of daily food, lodging and clothing. The record clearly shows that Conner was in court and that he authorized his attorney of record to authorize the signing by the judge of the Decree of Contempt.

In view of this record, I respectfully say that this appellate court should consider the daily necessities of the young children of Texas. They are entitled to support, at least to the extent of their absolute necessities of daily food, a place to lay their heads at night and some reasonable amount of clothing and support for the other bare necessities of life. Under the court's decision this day, this mother must start again, now, for the fourth time, to try to collect some child support. This record glaringly demonstrates that the Relator, Conner, is unquestionably in arrears over $6,000. Someone other than Conner has had to provide this support. Certainly this court should not encourage such recalcitrant litigants and parents who are so obviously in arrearage in such a large amount by construing *TEX.FAM.CODE ANN. Sec. 14.32* (Vernon 1986 and Vernon Supp.1988) as it does today.

A judgment, awarding support for children, signed and rendered by consent or understanding, possesses neither less nor greater force or effect than if the judgment had been arrived at after protracted, heated, adversarial litigation. We have a consent judgment here. Indeed, such a judgment may be less subject to attack since consent excuses certain errors and operates to end the controversy between the parties. Therefore, in suits to enforce consented-to judgments, or judgments arrived at by understanding, the parties thereto may not raise contractual defenses because such defenses constitute impermissible attacks. *See Peddicord v. Peddicord*, 522 S.W.2d 266 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

The contemnor, Conner, was before a court that had full jurisdiction of him and he was afforded all of his rights under due process of law. Conner authorized his attorney of record to approve the Decree of Contempt without limitation.

I would hold that *TEX.FAM.CODE ANN. Sec. 14.32* (Vernon 1986 and Vernon

---

1. Conner was Respondent in the trial court but Relator in the appellate court.

Supp.1988), was complied with fully under this record when Rocky Conner, for all practical purposes, acquiesced in, consented to, and understood fully, the trial court's Decree of Contempt.

Furthermore, the Court's opinion today requires a full hearing, probably adversarial in nature, unless the magic phrase "agreed on by the parties" is used. This requirement, I respectfully submit, is futile and tends strongly to defeat the parties getting together and working out their differences. Also, I opine, after a heated contest, many more parents, usually the father, will be actually sent to jail.

Respectfully submitted.

