Charline Jones SORRELS, Appellant,

v.

Paul Allison SORRELS, Appellee.

No. 9035.

Court of Civil Appeals of Texas, Amarillo.

Dec. 31, 1979.

Rehearing Denied Dec. 31, 1979.

Dalton, Moore, Forde, Joiner & Stollenwerck, Wayne A. Johnson, II, Dallas, for appellant.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, M. Leigh Bartlett, Dallas, for appellee.

DODSON, Justice.

We withdraw our former opinion handed down on November 28, 1979, and substitute this one in its place which reaches the same result. The motion for rehearing is overruled.

Charline Jones Sorrels appeals from a take-nothing summary judgment rendered upon her action against her former hus-

band, Paul Allison, for delinquent support and maintenance payments under a property settlement made by the parties and approved by the court in a divorce decree. We reverse the judgment and remand the action for a trial on the merits.

Charline Jones Sorrels and Paul Allison Sorrels entered into a written property settlement which was approved by the court in a divorce decree dated January 31, 1969. The settlement agreement, which required Mr. Sorrels to make support and maintenance payments[1] specifically provided that "should First Party [Mrs. Sorrels] remarry, such remarriage shall have no effect upon the obligation of Second Party to make the aforesaid payments."

On November 22, 1969, Charline and Paul Sorrels were remarried to each other. The second marriage ended in divorce on March 31, 1977. In the second divorce proceeding the parties made no property settlement agreement; therefore, the court decreed a division of the estate of the parties. In this decree, the court made no attempt to deal with the property either party received under the property settlement agreement in the first divorce proceeding and made no attempt to decree support and maintenance payments.

Charline Sorrels instituted this suit to recover payments past due under the support and maintenance provisions of the original settlement agreement in the alleged amount of $151,961.68. In her action, she claims that Mr. Sorrels made no payments under the terms of the agreement after the parties were remarried on November 22, 1969. Mr. Sorrels answered that the maintenance and support provisions were rendered inoperative by the remarriage as a matter of law and that the action was barred by the second divorce judgment under the doctrine of res judicata. Defendant also raised the defenses of waiver, limitations and payment. Both parties moved for summary judgment. The trial court granted defendant's motion and entered a take-nothing judgment on Mrs. Sorrels' action.

## I

■ On appeal, Mrs. Sorrels attacks the summary judgment with eight points of error. In the third point, she maintains that Mr. Sorrels' contractual obligation to make support and maintenance payments under the terms of the original property settlement survives the parties' remarriage to each other and their second divorce. In support of the judgment, Mr. Sorrels says the support and maintenance provisions of the agreement are rendered inoperative and void by the parties' subsequent remarriage to each other. Relying primarily on *McDaniel v. Thompson*, 195 S.W.2d 202 (Tex.Civ.App.—San Antonio 1946, writ

---

1. The property settlement agreement provides that Mr. Sorrels make support and maintenance to Mrs. Sorrels, as follows:

 1. $650.00 per month beginning on the first day of March, 1969, and continuing for the next succeeding 179 months, being a total of $116,000.00.

 2. The sum of $500.00 every three (3) months beginning June 1, 1969, and continuing for 59 additional quarters.

 3. The sum of $915.12 annually, the first such sum being payable on the next business day immediately following the day upon which the decree of divorce is entered and a like sum being payable on the same date each year thereafter until at [sic] total of fifteen (15) such sums, (including the original payment) have been paid, which sums shall be used to pay the premium on a decreasing term life insurance policy (originally in the face amount of $116,000.00 and decreasing at the approximate rate of $7,800.00 per year)

insuring the life of Second Party with First Party having all incidents of ownership thereon. In the event that First Party shall die prior to the completion of such schedule of payments, the quarterly payment of $500.00 shall cease, but the monthly payments of $650.00 and the annual payment provided in Paragraph 3, above, of this Article VI, shall continue as scheduled. . . . Should First Party remarry, such remarriage shall have no effect upon the obligation of Second Party to make the aforesaid payments.

The agreement further provides:

In the event Second Party should fail to make any payment called for hereunder when due, and should he remain in default for more than thirty (30) days after written notice from First Party, the entire unpaid balance of the $116,000.00 due First Party under the provisions of Paragraph 1 of this Article VI shall, at the election of First Party, become at once due and payable.

ref'd), Mr. Sorrels states in his brief that the general rule in Texas is that a remarriage of former spouses annuls the provisions of a prior divorce decree relating to alimony and/or support.

In *McDaniel*, Fred and Dida McDaniel had been married, divorced and then remarried to each other. They remained married until Dida McDaniel's death. The divorce decree failed to divide the community estate of the parties. In this suit to determine the passing of real property in which the deceased, Dida McDaniels, had an interest, the question for the court was the status of the undivided property owned by the parties at the time of the divorce decree after the parties remarried. The court stated:

> It is well settled in this State that "Where a husband and a wife, owning community property, are divorced without the court in its decree having made any division of such property in the divorce decree, they become tenants in common in the property or joint owners thereof, just as if they had never been married."

*Id.* at 203. The court then determined that each parties' undivided interest in the community estate of the first marriage became each parties' separate property upon divorce, and the separate property status of the property continued during the second marriage of the parties to each other. .

In discussing the contention in *McDaniel*, that the property retained community property status by virtue of the parties' remarriage to each other, the court stated:

> We think it true that certain portions of a decree or judgment which also dissolves a marriage may be rendered ineffective or inoperative by a remarriage of the parties. *Examples are provisions relating to alimony payments.* 27 C.J.S. . Divorce § 240, p. 1000; those relating to custody and support of children and the like. 27 C.J.S. Divorce § 323, p. 1253. *But we do not believe it can be broadly maintained that the remarriage of divorced persons will in all instances place the parties and their property in the status*

*existing prior to the divorce* (emphasis added).

*Id.* at 203. Mr. Sorrels relies on this general statement to support his contention.

Our examination of the general statement and the cited authorities reveals that the alimony provisions which "may be rendered ineffective or inoperative by a remarriage of the parties" are *court decreed* alimony payments rather than contractual support and maintenance agreements. We find only two cases in the past nineteen years in which the courts of this country have considered the question. In *Travis v. Travis*, 227 Ga. 406, 181 S.E.2d 61 (1977), the court decided that court decreed alimony payments survived the remarriage of the parties to each other. In *Clothier v. Clothier*, 33 Tenn.App. 532, 232 S.W.2d 363 (1950), the court determined that court decreed alimony payments did not survive a subsequent marriage of the parties to each other. Both of these decisions were grounded on public policy considerations which were pertinent to the statutory law of each state. We do not consider the decisions in *McDaniel, Travis* or *Clothier* controlling in the case before us.

In *Francis v. Francis*, 412 S.W.2d 29 (Tex. 1967), the court construed the legal effect of support provisions in a property settlement agreement with similar import as the agreement before us. The court recognized a significant distinction between court decreed support payments and support provisions in property settlement agreements which are agreed to by the parties and merely approved by the court. The former are considered void as contrary to the public policy of the state and the latter are recognized as valid contractual rights. When speaking directly to the legal effect of the contractual support provisions of the agreement, the court stated:

> While Art. 4638 directs courts granting divorces to "order a division of the estate of the parties in such a way as the court shall deem just and right," it is not the purpose of the statute to proscribe amicable division and settlement by the parties. And if as a part of their settlement the

parties agree that the husband will make support payments to the wife after a divorce is granted, approval of the agreement by the court should not be held to invalidate it as alimony. Amicable settlement by the parties of their property rights should be encouraged, not discouraged. *The agreement will then have whatever legal force the law of contracts will give to it* (emphasis added).

*Id.* at 33. Thus, under the decision in *Francis* the support provisions of the property settlement agreement have whatever legal force the law of contracts gives it.

■ In the property settlement agreement before us, the parties specifically agreed that "should First Party [Mrs. Sorrels] remarry, such remarriage shall have no effect upon the obligation of Second Party to make the aforesaid payments." In the law of contracts, one of the most fundamental principles is that a contract must be construed in accordance with the terms and language used in the agreement. *See, e. g., Citizens Nat'l Bank v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941); *Downe v. Askey*, 529 S.W.2d 121, 123 (Tex. Civ.App.—Fort Worth 1975, no writ); *Republic Nat'l Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 79–80 (Tex.Civ.App. —Dallas 1968, writ ref'd n. r. e.).

> In other words, the terms of the agreement, *if they are free of ambiguity and do not conflict with the policy of the law*, will be deemed to establish the rights of the parties. The courts will enforce the agreement as the parties have made it, without regard to whether the parties have contracted wisely or foolishly and without regard to whether, in the light of subsequent events, a hardship was effected. In the absence of a fraud or mistake, the courts will not make a new contract for the parties or add to, modify, or change in any particular the agreement that they have made (emphasis added).

13 Tex.Jur.2d *Contracts* § 130 (1960) (see numerous authorities cited therein).

■ Mr. Sorrels does not contend that the agreement is ambiguous, and we do not find any declared policy of the law in this state which renders the support provisions of the first property settlement ineffective or inoperative. In the first divorce decree the court merely approved the property settlement agreement made by the parties and made no attempt to order Mr. Sorrels to make the support payments. Under the circumstances, we conclude that the subsequent remarriage of the parties to each other does not impair or render inoperative the contractual support provisions of the property settlement agreement made by the parties and approved by the court in the first divorce decree.

## II

■ In points four and five, Mrs. Sorrels says her cause of action is not barred by the second divorce judgment under the doctrine of res judicata. Mr. Sorrels maintains that it is so barred. He reasons that the second party settlement agreement contains no provision for the support of Mrs. Sorrels; that she could have, but did not raise this matter in the second divorce proceeding; therefore, he says the support provision of the first property settlement agreement is rendered inoperative by the second divorce decree. We do not agree with Mr. Sorrels' contention.

In general, for a judgment in one suit to bar the bringing of a subsequent action, there must be identity of the subject matter, identity of the causes of action, and identity of persons and parties. *Simpson v. Simpson*, 380 S.W.2d 855, 862 (Tex.Civ.App. —Dallas 1964, writ ref'd n. r. e.). There is no identity of the subject matter or identity of the causes of action in the second divorce proceeding and the action before us. In the second divorce proceeding, the court could not compel the parties to make an agreement concerning the payment of support and maintenance for either party, and the court had no authority to direct by decree the payments of support and maintenance to either party beyond the consummation of the proceeding. *Francis v. Francis, supra*, at 32; *see Ex parte Jones*, 163 Tex. 513, 358 S.W.2d 370, 375 (1962). Under these circumstances the absence of any provision for

support payments in the second property settlement agreement was not and could not be adjudicated in the second divorce proceeding. Therefore, we conclude that Mrs. Sorrels' failure to affirmatively raise the issue in the second divorce proceeding does not preclude her subsequent action on the contractual support provisions of the first property settlement agreement.

### III

 In her first point Mrs. Sorrels maintains that the trial court erred by failing to grant her motion for summary judgment because the first divorce judgment approving the first property settlement agreement is final and not subject to collateral attack by the contractual defenses of waiver, limitations and payment. In support of her position, she primarily relies on *Peddicord v. Peddicord,* 522 S.W.2d 266 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.). In *Peddicord,* a former wife sued her former husband in a separate action to recover delinquent support and maintenance payments under a property settlement agreement made by the parties, approved by the court and incorporated into a divorce decree. Applying the law of judgments, the court determined that the husband's contractual defenses of lack of consideration, failure of consideration, duress and lack of capacity constituted impermissible collateral attacks on the divorce judgment.

The rationale of the decision in *Peddicord* is to preserve the integrity and validity of property settlement agreements made by the parties and approved by the court in divorce decrees. The effect of the decision is to preclude defenses to the agreement which attack its validity at inception, execution, or approval by the court in the divorce decree. However, in the case before us, the defenses of waiver, limitations and payment advanced by Mr. Sorrels do not attack the validity of the agreement. These defenses are grounded on the occurrence of events subsequent to the inception, execution and approval of the agreement by the court in the divorce decree. Thus, we

are not persuaded that the decision in *Peddicord* is controlling here.

Under the decisions in *Ex parte Jones, supra; Francis v. Francis, supra,* and *McCray v. McCray,* 584 S.W.2d 279 (Tex. 1979), Mrs. Sorrels' action to enforce the contractual support and maintenance provisions of the property settlement agreement made by the parties and approved by the court in the first divorce decree rests in the law of contracts rather than judgments. By analogy, we conclude that Mr. Sorrels may establish the defenses of waiver, limitations and payment in defense of this action.

### IV

 In her second point, Mrs. Sorrels maintains that the court should have granted her motion for summary judgment because the agreement provides that her remarriage shall have no effect upon Mr. Sorrels' obligation to make the support payments. We discussed above the effect of the remarriage provision. Notwithstanding this provision, for Mrs. Sorrels to prevail on her motion, she must establish by the summary judgment proof the absence of any genuine issues of fact in the affirmative defenses raised by Mr. Sorrels. Without discussing the summary judgment proof, we deem it sufficient to say that she fails to establish the absence of any genuine issues of fact as to Mr. Sorrels' affirmative defenses. Therefore, the trial court did not err in refusing to grant her motion for summary judgment.

### V

In points six, seven and eight, Mrs. Sorrels attacks the judgment on the grounds that the summary judgment proof fails to conclusively establish Mr. Sorrels' defenses of waiver, limitation and payment. We agree and point out that Mr. Sorrels does not contend otherwise.

In reversing the summary judgment and remanding the action for a trial on the merits, we conclude that:

1. The enforcement of the support and maintenance provision of the original prop-

erty settlement agreement rests in the law of contracts rather than the law of judgments;

2. The contractual support and maintenance provision of the original property settlement agreement survives the parties' subsequent remarriage to each other and the second divorce decree;

3. Mr. Sorrels' defenses of waiver, limitations and payment are not barred as collateral attacks on the first divorce judgment;

4. Mrs. Sorrels' action is not barred by the second divorce decree under the doctrine of res judicata;

5. Mrs. Sorrels' action is not conclusively established by the summary judgment proof; and

6. Mr. Sorrels' defenses of waiver, limitations and payment are not conclusively established by the summary judgment proof.

In summary, we overrule Mrs. Sorrels' first and second points of error, and sustain her third, fourth, fifth, sixth, seventh and eighth points of error. Accordingly, the take-nothing summary judgment is reversed and the action is remanded to the trial court for a trial on the merits.

COUNTISS, J., not participating.