**John GIDDINGS, Appellant,**

v.

**Sharon Clark GIDDINGS, Appellee.**

**No. 14022.**

Court of Appeals of Texas, Austin.

Nov. 6, 1985.

Rehearing Denied Jan. 8, 1986.

Richard L. Crozier, Don Kothman, Austin, on appeal only, for appellant.

Joel B. Mitchell, Austin, for appellee.

Before SHANNON, C.J., and KEITH * and BRADY, JJ.

PER CURIAM.

Appellee, Sharon Giddings, brought suit against her former husband, appellant, John Giddings, seeking damages for breach of an Agreement Incident to Divorce. Pursuant to a jury verdict rendered in response to special issues, the trial court awarded Mrs. Giddings $45,823 in damages, $12,750 in attorney's fees and her costs of court. We will reverse the judgment and remand the cause with instructions.

The Agreement Incident to Divorce (the "Agreement") which divided the estate of the parties was approved by the court and incorporated by reference into the decree of divorce. Section VII of the Agreement provided that the family residence was to be awarded to appellee. It further provided that in order to equalize the value of the parties' respective shares of the community estate, as well as to bring the residence, which was in poor condition, into a readily marketable condition so as to enable appellee to sell it and obtain its fair market value, appellant was to occupy the residence from December 1, 1980 to June 1, 1981 to make specified repairs in a good and workman-like manner. Section XI of the Agreement provided:

> The parties waive all contractual defenses to any actions to enforce this agreement and agree that either party may enforce this agreement by an action in contract, by a suit to enforce the decree of the court granting the parties' divorce, or by the issuance of process by the court granting the parties' divorce.

Around May 23, 1981, appellant became concerned that he would not be able to finish the required repairs prior to the June 1 deadline. He proceeded to obtain bids from contractors to complete the repairs. There was conflicting testimony as to a conversation between appellant and appellee occurring on May 23. Appellant testified that he explained the situation to appellee and offered to pay her the amount of the contractors' bids. Appellee's response, according to appellant, was "you might as well forget it, I already have sold the property 'as is.'" The parties' daughter also testified that appellee had told her prior to June 1 that the house had been sold and there was no need to bother with the repairs. There was also testimony from a real estate agent that appellee had told her prior to June 1 that the house had been sold. There was further evidence that during the period immediately prior to June 1, appellee was in need of cash.

Appellee testified that while she had negotiated before June 1 with the person who eventually purchased the residence, a contract of sale was not signed until June 5, with the closing occurring on July 9, 1981.

---

* [Quentin Keith, Justice (retired), Ninth Court of Appeals, sitting by assignment. *See* Tex.Rev. Civ.Stat.1812.]

Appellee's version of the May 23 conversation was that she told appellant that she had to sell the residence and that if he did not complete the repairs, she would still have to sell the house and planned to do so. Appellant had not completed the repairs when he surrendered the residence to appellee on June 1. On July 10, appellee's lawyer sent appellant a letter stating that appellee intended to hold him to the terms of the Agreement. On October 8, 1981, appellee filed the lawsuit that is the subject of this appeal.

In response to special issues, the jury found that the fair market value of the residence on June 1 was $80,000 and that had all of the repairs been completed as required by the Agreement, the fair market value on the same date would have been $120,000. The jury further found in response to special issue number 5, that appellee had, on or about May 23 but prior to June 1, informed appellant that she had sold the house 'as is' and that he did not have to complete the repairs listed in the Agreement. In special issue number 6, the jury failed to find that appellant would have completed the repairs in accordance with the Agreement prior to June 1, if it had not been for the statement inquired about in special issue number 5.

The trial court disregarded the jury's answer to special issue number 5 and awarded appellee $40,000 in damages, representing the difference between the fair market value of the residence on June 1 and what it would have been had the required repairs been made. Appellee was also awarded damages for other breaches of the Agreement, attorney's fees and costs of court.

In his first point of error, appellant argues that the trial court erred in disregarding the jury's answer to special issue number 5 and in refusing to hold that appellee waived her right to performance under Section VII of the Agreement. Appellee unsuccessfully objected to the introduction of evidence as to a possible waiver by her of the repair obligations imposed in the Agreement, arguing that to permit the interposition of this contractual defense would not only contravene the express provisions of Section XI of the Agreement but, more importantly, would amount to a collateral attack on the judgment of divorce. Thus, prior to addressing the propriety of the court's submission and application of the waiver issue, we are called upon to decide whether this issue was properly raisable.

■ It is well settled that once an agreement between parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court. *Ex parte Gorena*, 595 S.W.2d 841 (Tex.1979). The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties. Ex parte *Gorena, supra; Pollard v. Steffens*, 161 Tex. 594, 343 S.W.2d 234 (1961); *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890 (1956). It has thus been generally held that in suits to enforce agreed judgments, the parties may not raise contractual defenses because such defenses constitute impermissible collateral attacks on the prior judgment. *Ex parte Gorena, supra; Peddicord v. Peddicord*, 522 S.W.2d 266 (Tex.Civ.App.1975, writ ref'd n.r.e.); *Akin v. Akin*, 417 S.W.2d 882 (Tex.Civ.App.1967, no writ); *Chess v. Chess*, 627 S.W.2d 513 (Tex.App.1982, no writ).

Courts presented with the issue have been unanimous in holding that the broad prohibition against permitting the interposition of contractual defenses in an action to enforce an agreed judgment applies to those defenses that attack the validity of the agreement at *inception, execution,* or *at the time it is approved by the court* in the divorce decree. Thus, the raising of such defenses as lack of consideration, failure of consideration, duress and lack of capacity has been consistently rejected by the courts as constituting an impermissible

collateral attack on the judgment of divorce. *See Peddicord v. Peddicord, supra.*

There has been a split of authority, however, with respect to whether contractual defenses that are based upon events that occur subsequent to the execution and approval of the agreement in the judgment of divorce may properly be raised in a suit to enforce the agreement. This Court, in *Akin,* refused to permit the former husband to avoid liability for delinquent child support payments provided for in an agreement incorporated into a divorce judgment by asserting that his former wife had materially breached her obligations under the agreement and that there had been a failure of consideration. In holding that if the former husband had any remedy it was by direct attack on the divorce judgment in the trial court which rendered it, it being the duty of other courts to enforce the judgment, this Court approved the rule that

'In the absence of fraud or mistake a consent judgment is valid and binding, as such, as between the parties thereto and their privies. The judgment is not invalidated by a subsequent failure to perform a condition on which the consent was based, ... and unless it is vacated or set aside in the manner provided for by law it stands as a final disposition of the rights of the parties thereto.'

In *Peddicord,* the Court of Appeals in Beaumont held that in a suit to enforce a settlement agreement incorporated into a judgment of divorce, the defendant would not be permitted to collaterally attack the judgment by raising such contractual defenses as lack or failure of consideration, duress in execution, or lack of mental capacity to contract. The Supreme Court in dicta in Ex parte *Gorena, supra,* recited the foregoing *Peddicord* principle. *See also Chess v. Chess, supra.*

In *Sorrels v. Sorrels,* 592 S.W.2d 692 (Tex.Civ.App.1979, writ ref'd n.r.e.), the Amarillo Court of Appeals read *Peddicord* as precluding only defenses that attack the validity of the agreement at inception, execution or approval by the court in the divorce decree. That court held that the defenses of waiver, limitations and payment might be raised, grounded as they were in the occurrence of subsequent events, although in that case the defendant's summary judgment proof had failed, as a matter of law, to conclusively establish such defenses.

Similarly, in *Conner v. Bean,* 630 S.W.2d 697 (Tex.App.1981, writ ref'd n.r.e.), the Houston First Court of Appeals, in a suit for breach and anticipatory breach of a contractual alimony agreement incorporated into a divorce judgment, held that a former husband's defenses of no consideration and no acceptance of his offer were barred as collateral attacks on the final judgment of divorce, as they attacked the validity of the agreement at its inception. The court, however, citing *Sorrels,* held that, although the issue had not been properly presented to the jury and the court, the husband would be permitted to raise the defense of condition subsequent (the termination of the husband's support obligation upon the wife's remarriage), as that defense was grounded on an event occurring subsequent to the execution and approval of the agreement by the court in the judgment of divorce.

Recently, in *Herbert v. Herbert,* No. 2–84–197–CV, Tex.App.—Ft. Worth, August 7, 1985 (not yet reported), the Fort Worth court, in a suit to enforce a property settlement agreement incorporated into a judgment of divorce, was asked to follow *Sorrels* and *Conner* to permit the defendant to interpose the defense of failure of consideration and to assert a counterclaim that his performance under the agreement was excused because of the plaintiff's breach. The court noted that the facts were analogous to the facts before this Court in *Akin,* and resolved the conflict among the authorities by adopting the following intermediary position:

While the agreement is to be construed and enforced as a contract, it is also a final judgment. In the event one of the parties breaches the contract, a suit for

damages or specific performance may ensue. The parties may raise contract defenses *in determining the measure of damages. But they may not do so if the effect would be to abrogate totally the final judgment which binds both parties.* [Emphasis added]

In order to resolve the issue before us we have been required to weigh competing policy considerations involving the need to preserve the integrity, validity and finality of judgments and the agreements that have been made a part thereof, along with traditional principles of contract law. We conclude that the solution adopted by the Fort Worth court strikes an equitable balance between these competing policy considerations, provides a workable formula for adjusting the rights of the parties, and preserves the essential integrity of the judgment.

■ We find and so hold that a meaningful distinction can and should be made between those contractual defenses that attack the validity of the agreement at its inception, execution, or approval by the court in the judgment of divorce and, as such, could and should have been raised at that time, and those defenses that could not have been raised then because they relate to subsequent events. The former defenses are barred as collateral attacks on the judgment; the latter defenses, however, may be raised and considered by the trier of fact in determining the measure of damages so long as the effect is *not* to abrogate totally the final judgment. *Herbert v. Herbert, supra; Sorrels v. Sorrels, supra; Conner v. Bean, supra.*

■ We find that Section XI of the Agreement, by which the parties waive all contractual defenses to an action to enforce the Agreement, does not require a different result. Nor do we view this Court's opinion in *Akin* to be dispositive of the issue here presented. *Akin* was a suit to enforce a child support obligation contained in an agreement approved in a divorce judgment. This Court's broad language forbidding the interposition of the defense of failure of consideration must be construed within the specific context of a suit to enforce a child support obligation; a statutory obligation as to which, at the time the case was decided, there were no statutory defenses. *See* Tex.Fam.Code Ann. § 4.02 and 14.09(e) and (f) (Supp. 1985).

Having determined that the trial court properly permitted appellant to submit evidence on the issue of waiver, we now consider whether the court erred in disregarding the jury's findings as to facts from which the court could find that appellee had waived her rights under the Agreement because the jury failed to find facts from which the court could find reliance.

■ Waiver and estoppel are separate and distinct doctrines. Waiver has been frequently defined as an intentional relinquishment of a known, existing right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Company,* 416 S.W.2d 396 (Tex.1967). Waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by consideration; nor is it essential that it be based upon an estoppel. *Equitable Life Assurance Society of the United States v. Ellis,* 105 Tex. 526, 147 S.W. 1152 (1912). Estoppel, on the other hand, arises "where by fault of one, another has been induced to change his position for the worse." *Wirtz v. Sovereign Camp, W.O.W.,* 268 S.W. 438 (Tex.1925).

■ We find that there was ample support in the evidence for the jury's finding of appellee's waiver of appellant's repair obligation under the Agreement. To the extent that she may have attempted by her letter of July 10, 1981, to retract her prior waiver, the retraction, coming after June 1, was too late to render the waiver ineffective. We hold that it was error for the trial court to disregard the jury's find-

ing of facts showing appellee's waiver by requiring a concommitant finding of facts showing appellant's reliance. The first point of error is sustained. We reverse that portion of the judgment that awarded appellee $40,000 in damages for appellant's breach of his repair obligation under Section VII of the Agreement.

Because of our disposition of appellant's first point of error, we do not reach his second and third points. By his fourth point of error, appellant complains of the trial court's issuance of a writ of attachment on certain real property held by him. Specifically, appellant complains that because neither the application for the writ or the accompanying affidavits are included in our record or with the papers of the cause filed in the district court, he has no way of ascertaining whether there was compliance with the statutory requirements for the issuance of the writ. Appellant further complains that the trial court erred in issuing the writ because appellee's claim was not a liquidated one but rather unliquidated and contingent.

■■ There is no evidence in the record to indicate that appellant presented his grounds in opposition to the issuance of the writ prior to his presentation of them to this Court. Because defects in the attachment process may not be raised for the first time on appeal but must instead be presented to the trial court in a motion to quash, we hold that appellant has waived his right to complain of such defects to this Court. *Wallace v. First National Bank of Gallatin, Tennessee*, 95 Tex. 103, 65 S.W. 180 (1901), *Walden v. Locke*, 33 S.W.2d 475 (Tex.Civ.App.1930, no writ). The fourth point of error is overruled.

By his fifth point of error, appellant argues that there was no evidence or legally insufficient evidence to support the trial court's award of attorney's fees to appellee. Section XII of the Agreement provided:

> If a party defaults in performing any of that party's obligations under this agreement, the party obligee shall be entitled to recover from the defaulting party

whatever reasonable attorney's fees, court costs, and other expenses the party obligee may incur in enforcing performance.

■ The court's award of $12,750 in attorney's fees, with additional sums to be recoverable in the event of future successful appellate steps, was based in large part upon appellant's success in enforcing Section VII of the Agreement. In light of our disposition of the first point of error, we are obliged to sever the claim for attorney's fees and remand this issue for a determination as to what reasonable attorney's fees were incurred by appellee in the successful enforcement of those parts of the Agreement not here challenged. *See Great American Reserve Insurance Company v. Britton*, 406 S.W.2d 901 (Tex. 1966).

Appellee complains in two cross-points that the trial court erred in overruling her motion for a directed verdict and in submitting special issues 5 and 6. In light of our disposition of this cause, we find no merit to either cross-point and both are overruled.

We reverse the judgment and remand the cause with instructions that a reasonable attorney's fee be determined and a judgment be entered for appellee for $5,823 in damages, attorney's fees and costs of court.