Dorothy **HERBERT**, Appellant,

v.

Hansel Kay **HERBERT**, Appellee.

No. 2–84–197–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 27, 1985.

Raymond D. Noah & Associates, Raymond D. Noah and Brenda B. Herrera, Richardson, for appellant.

Gayle E. Oler, Dallas, for appellee.

Before FENDER, C.J., and JOE SPURLOCK, II and HUGHES, (Retired), JJ.

## OPINION ON REHEARING

FENDER, Chief Justice.

The prior opinion and judgment in this cause, dated August 7, 1985, are hereby withdrawn, and the following substituted therefor. In our original opinion we reversed and remanded for a new trial; however, because we now hold that appellant failed to preserve the error of which she complains on appeal, and which this Court previously used as the basis for reversal, we grant appellee's motion for rehearing.

This is an appeal from a take-nothing judgment rendered against appellant, Dorothy Herbert, in her suit to enforce the property settlement agreement and judgment in a prior divorce decree between the parties. Appellee, Hansel Kay Herbert, answered asserting the affirmative defense that appellant had materially breached the agreement herself, thereby excusing further performance on his part, i.e. payment to appellant of one-half of appellee's military retirement benefits. Upon the jury's finding that appellant had not substantially complied with the duties and obligations required of her under the property settlement agreement contained in the divorce decree, the trial court rendered a take-nothing judgment against appellant. From this judgment appellant raises seven points of error.

We reverse and remand because we find the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust.

A brief discussion of the procedural history of this case is necessary. In August of 1977, the parties were divorced by decree of a Dallas County court after many years of marriage. The property adjudica-

tion decree of the court was based entirely upon a property settlement agreement entered into by the parties. This multi-page document set out in very specific detail which party was to receive each item of personal property owned by the parties, jointly or severally, at the time of the divorce. The agreement, which was incorporated verbatim into the decree of the court, awarded appellant as her sole and separate property various items including:

One-half of the monthly retired pay to be paid by the United States Navy with respect to the military service of HANSEL KAY HERBERT, said retired pay eligibility commencing upon application at age sixty (60) years of HANSEL KAY HERBERT in accordance with the provisions of Title 10, U.S.Code, Chapter 67, as the pay is paid each month.

A dispute arose almost immediately after the divorce as to whether appellant, who had remained in complete and sole possession of the house, had turned over to appellee all of his personal property. Appellee sent a three-page list to appellant of items he claimed appellant wrongfully retained. Some, but not all, of the items were sent to or retrieved by appellee at later dates. Appellee and his attorney wrote appellant and her attorney that these items (military service memorabilia, family papers and photographs, specific records from appellee's extensive jazz collection, slides, an 8mm movie, etc.), were of great personal value to appellee, and were a material part of the property divided in the divorce. Appellee further notified appellant that her failure to surrender the items would be considered a major breach of the contract, and appellee would in turn consider himself not obligated to pay to appellant her one-half of the military retirement benefits if and when they became due.

During February, 1982, appellee began receiving military retirement pay but refused to send any portion of these benefits to appellant. On August 9, 1982, appellant sought to enforce this provision of the divorce decree by filing a contempt action in the Dallas Court which had divorced the parties. The motion was dismissed because the court held that the decree was not specific enough to be enforced by contempt. When appellant filed a motion to clarify the judgment, appellee filed a plea of privilege and counterclaim; the Dallas court dismissed the motion to clarify, granted the plea of privilege, and transferred the cause to Tarrant County where appellee resided.

Appellant thereupon filed suit in Tarrant County seeking: a money judgment against appellee in an amount representing one-half of all military retirement benefits actually received by appellee up to that time; judgment for monthly payments unpaid but to be received by appellee who, appellant alleged, was acting as constructive trustee for appellant; and attorney's fees for the Dallas actions as well as for the Tarrant County suit.

Appellee answered contending: appellant's action was barred by the principle of res judicata; to the extent that appellant's suit was based on a written contract, the written instrument was without consideration, or the consideration of same had failed in whole or in part; appellant was not entitled to any equitable relief because she had failed to comply with the provisions of the property settlement agreement/judgment, and came into court with unclean hands; and appellant was not entitled to specific performance because she materially breached the property settlement agreement/judgment by withholding and refusing to deliver to appellee certain items of personalty.

Appellee additionally filed a counterclaim seeking: specific performance of the property settlement agreement/judgment; entry of an order stating the items being wrongfully retained by appellant are held by her in a constructive or resulting trust; and delivery of these personal items as a condition precedent to the payment by appellee of any military retirement benefits. Alternatively, appellee sought rescission of the property settlement provisions of the divorce decree or a money judgment

against appellant for the value of the items, an amount in excess of $20,000.00.

After a full jury trial on the merits, both parties requested special issues which were refused by the trial court. The sole issue presented to the jury was whether appellant had substantially complied with the duties and obligations required of her under the property settlement agreement which was contained in the divorce decree. The jury answered that she had not. The trial court rendered a take-nothing judgment against appellant, decreeing appellant was not entitled to recover any portion of the monthly retirement pay which had been paid in the past or which would be paid in the future by the United State's Navy with respect to appellee's military service.

In her first two points of error, appellant contends the trial court erred in re-adjudicating the property division in the divorce judgment by divesting appellant of her one-half interest in appellee's military retirement benefits and allowing appellee to raise impermissible contractual defenses to collaterally attack the final divorce judgment. Appellee's position is that the property settlement agreement is to be treated as a contract, not as a judgment, and the contractual defense of subsequent material breach (lack of substantial compliance) is not a collateral attack. Therefore, he argues, the jury's finding that appellant failed to substantially comply with the property settlement. agreement precluded her recovery, and excused appellee's continued performance under the contract.

■ At this junction we must discuss a procedural dilemma with which we are confronted. Appellee's affirmative defense of material breach was properly plead by him, and evidence was introduced at trial concerning this theory. Apparently, both parties and the trial court proceeded under the theory that if appellee proved appellant had not substantially complied with the duties and obligation specified in the property settlement agreement/judgment, she had materially breached the agreement and was not entitled to enforce its provisions. Although on appeal appellant argues quite

strenuously that appellee's affirmative defense was an impermissible collateral attack on a final judgment, for the reasons stated herein we unfortunately must find that appellant acquiesed in the submission of this theory to the jury and, therefore, appellant is precluded from challenging its validity.

At trial, appellant requested the submission of numerous special issues. Several of these issues concerned questions regarding appellee's receipt and non-payment of his military retirement benefits; several dealt with whether appellant had failed to deliver any items (and inquired as to which) to appellee as required by the divorce decree; and one requested issue inquired whether appellant had failed to perform the duties and obligations required of her under the divorce decree. Lastly, appellant requested the following special issue:

(2) Do you find from a preponderance of the evidence that Plaintiff substantially complied with the duties and obligations required of her under the Decree of Divorce?

You are further instructed that if the answer to the foregoing Issue is "We do", that substantial compliance with the specified requirements is the legal equivalent of compliance.

The trial judge wrote "refused" on this requested issue, and submitted only one issue in his charge to the jury:

SPECIAL ISSUE

Do you find from a preponderance of the evidence that Dorothy Herbert substantially complied with the duties and obligations required of her under the property settlement agreement contained in the divorce decree dated August 12th, 1977.

In answering the above and foregoing Special Issue you are instructed that substantial compliance as used in this Special Issue is a performance of all important particulars and permits only such omissions or deviations from the agreement as are inadvertent and unknowingly and was not due to bad faith.

Answer "She did substantially comply" or "She did not substantially comply".

ANSWER: *She did not substantially comply.*

From a comparison of the two special issues quoted above, it is evident that although the trial court marked "refused" on appellant's requested issue # 2, the special issue which was submitted to the jury was essentially identical to that which was requested and tendered *by appellant.* Additionally, appellant's counsel specifically stated he had "no objections" to the court's charge.

It is axiomatic that error in submitting a special issue may not be urged by a party who requested the submission. *Corpus Christi National Bank v. Gerdes,* 551 S.W.2d 521, 525 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *New Trends, Inc. v. Stafford-Lowdon Company,* 537 S.W.2d 778, 783 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.). In other words, as was done here, a litigant may not ask something of a court and then complain that the court committed error in giving it to him. *See Northeast Texas Motor Lines Inc. v. Hodges,* 138 Tex. 280, 158 S.W.2d 487, 488 (Tex.Comm'n App. 1942, opinion adopted).

While we wholeheartedly disapprove of the theory upon which the trial proceeded—which resulted in appellant being divested of her ownership in personalty, title to which had previously vested in her by virtue of a final judgment incorporating a property settlement agreement—the end result in the instant case is that appellant has not preserved the error which she now challenges. Accordingly, we are bound by the well-established rules of appellate procedure and must reluctantly overrule appellant's first two points of error.

■ In appellant's third point of error she argues it was error for the trial court to deny her motion for summary judgment. An order overruling a motion for summary judgment is not a proper subject for appeal after a trial on the merits. *Logan v. Grady,* 482 S.W.2d 313 (Tex.Civ.App.—Fort Worth 1972, no writ); *Dyche v. Simmons,* 264 S.W.2d 208 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). Appellant's third point of error is overruled.

■ In her fourth point of error, appellant alleges the Dallas court erred in overruling and dismissing her motion to clarify and enforce the prior divorce orders. Initially, we must determine whether the Dallas trial court's Order was interlocutory and thus not appealable until after final resolution of the contract issues. The Dallas Court of Appeals recently ruled, in a case involving motions in aid and clarification of judgment filed pursuant to secs. 3.70–3.72 of the Family Code, that orders issued pursuant to such motions are final and appealable. *See Starr v. Starr,* 690 S.W.2d 86 (Tex.App.—Dallas 1985, no writ) (per curiam). The Order before us was entered prior to the effective date of the Family Code sections at issue in *Starr.* The reasoning used by the Dallas Court of Appeals would lead us to the same result in the case at hand except for one important difference. In *Starr,* the court *only* had before it the motion and counter-motions of the parties seeking clarification of the divorce decree. Thus, the order of the court disposing of the motions to clarify disposed of all parties and issues before the court. *Id.* at 88. Here, however, the trial court's order dismissing the motion to clarify specifically did so *without* prejudice to the parties' contract claims. No order of severance was granted, thus the Dallas Order complained of was interlocutory and appealable only after the remaining conflicts between the parties were resolved. *See Pastory v. Pastory,* 483 S.W.2d 567, 568 (Tex.Civ.App.—Eastland 1972, no writ). Unfortunately, appellant complains generally of error on the part of the trial court in overruling and dismissing her motion to clarify, without bringing to this Court a statement of facts, findings of facts, conclusions of law, or the stipulations of the parties which the Dallas court recites it relied upon in reaching its decision.

■ In a trial to the court where no findings of fact or conclusions of law are

filed or requested, the judgment of the trial court implies all necessary findings of fact in support thereof. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984); *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). Further, TEX.R.CIV.P. 413 provides that the burden is on the party seeking review to see that a sufficient record is presented to show error requiring reversal. Therefore, in the absence of a statement of facts, every presumption must be indulged in favor of the trial court's findings and judgment, and where there are no findings and no statement of facts, such facts as are necessary to support the judgment must be presumed to have been found. *See Commercial Credit Corporation v. Smith*, 143 Tex. 612, 187 S.W.2d 363, 365 (1945); *Cloer v. Ford & Calhoun GMC Truck Company*, 553 S.W.2d 183, 185 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.).

■ Accordingly, it follows that the judgment of the trial court must be affirmed unless the record before us presents on its face fundamental error of law. *See Commercial Credit*, 187 S.W.2d at 365. We have reviewed the record and find it does not on its face reflect that fundamental error was committed by the trial court. Appellant's fourth point of error is overruled.

Appellant's seventh point of error asserts that the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, and therefore there was insufficient evidence to support the jury's verdict. Of course, TEX.R.CIV.P. 324(b)(3) provides that a motion for new trial specifying this ground is a prerequisite to a complaint on appeal that a jury finding is against the *overwhelming* weight of the evidence. In this regard, in her motion for new trial appellant contended that the verdict returned by the jury was so against the overwhelming weight and preponderance of the evidence that it was manifestly wrong and ought not to stand.

Appellee initially claims that because of the manner in which appellant phrased her point of error, her contention must be construed at best as a "no evidence" point. Appellee's contention is based upon the language contained in *Chemical Cleaning, Inc., v. Chemical Cleaning & Equipment Service, Inc.*, 462 S.W.2d 276 (Tex.1970) (per curiam) wherein the Court stated:

A trial court may commit error in overruling a motion for new trial because vital jury findings are contrary to the great weight and preponderance of the evidence, but it does not for that reason commit error in rendering judgment on the verdict. Hence, a point of error which states that the trial court erred in rendering judgment on a verdict because of the state of the evidence—if it is adequate for any purpose—is only a "no evidence" point.

*Id.* at 277.

■ Although in the instant case appellant's point of error is not phrased so as to assign error to the trial court's overruling her motion for new trial, neither does she phrase her point of error so as to contend that the trial court committed error in rendering judgment on the verdict. Therefore, the holding of *Chemical Cleaning* is inapplicable, and we find that appellant has properly preserved and assigned error.

■ In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Ford Motor Company v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). This is true even though the finding is supported by more than a scintilla of evidence and even though reasonable minds could differ about the conclusion to be drawn from the evidence. *Ford Motor Company*, 638 S.W.2d at 585.

Accordingly, we will proceed to review the evidence so as to determine whether it supports the jury's finding that appellant did not substantially comply with the duties and obligations required of her under the property settlement agreement/judgment. The trial court instructed the jury that substantial compliance is "a performance of all important particulars and permits only such omissions or deviations from the agreement as are inadvertent and unknowingly and was [sic] not due to bad faith."

The evidence presented at trial consisted of the testimony of the parties, their daughter, and two friends of appellant. The testimony established that after the parties' divorce decree was signed on August 12, 1977, their attorneys made arrangements to have appellee pick up the numerous items of personal property which had been awarded him in the decree. Inasmuch as appellant was in possession of the residence, where these items were stored, appellant was given the responsibility of assembling in one place all of these items for appellee to remove. Appellant testified with regard to the mechanics of this procedure that the night before this pre-arranged date, she and four other people had the divorce decree in front of them and each person assumed responsibility for gathering up various things that were listed on the divorce decree. At that point each item was checked off of the master list. The next day appellee arrived to remove these amassed items, and left apparently satisfied that he had received all that he was entitled to. Two of the four people assisting appellant also testified at trial and basically substantiated appellant's version of these events.

Appellee testified that when he picked up the property he consulted his list and to the best of his ability checked off the items awarded to him, but was unable to completely inventory each box because rain drops began falling. However, appellee did inventory the books and records when he got them to his home, at which point he realized that numerous items had been omitted. He then contacted Bonita Marti, appellant's friend and employer and one of the persons helping appellant to compile appellee's property, and gave her a list of the omitted items. Approximately a month later Marti left a box at appellee's office containing some of the items; however, appellee still complained that many items were missing. Appellant's response was that she and her friends had laboriously verified two or three times that all of the items listed in the divorce decree and awarded to appellee had actually been grouped together for him to pick up.

Shirley Anne Zahn, appellant's sister, testified that when they were grouping these items, all of the people shared responsibility for checking and verifying certain portions of the list, and they then did a final check with all of the helpers present, whereupon the total amount of items was put out onto the driveway, and the garage doors were closed (presumably insuring non-access by unauthorized persons).

The parties' daughter, Brandy Kay Herbert, testified that she had the occasion to visit her mother during the Thanksgiving holidays in 1977, soon after her mother and father were divorced. Since she had not had any contact with nor seen her mother in about two or three years, and had been recently married that summer, she took her husband over to introduce him to her mother and she tried to re-establish communications. While she was there she inquired specifically about certain items which she stated had belonged to her as a child and which she would like to pass on to her son. She testified that appellant informed her that the items were not there; however, the daughter stated that she looked around the house without her mother's permission and found these items in a closet. Additionally, in the same closet she noticed several items which appellee now claims were not given to him, but which appellant still contends she did in fact relinquish to him. The daughter testified that appellant then tried to physically throw her out of the house and threatened to call the police, and finally ran out into the yard screaming for help from the neighbors, stating that someone was burglarizing her home. The

daughter did state that she removed from appellant's house a train set and a set of bronzeware eating utensils (approximately 109 pieces), and we note that the divorce decree specifically awarded these items to appellant.

In rebuttal, appellant testified that on that occasion her daughter and other people arrived unexpectedly at her back door, came into the house and everyone exchanged pleasantries for ten or fifteen minutes, whereupon her daughter went out into the garage and searched it, finding the train set and set of bronzeware. She further stated that her child then physically struck her and flung her out into the backyard over the back porch, and down three steps. She was bodily bruised and scratched and began screaming for help from the neighbors. Bonita Marti verified that the day following this incident she observed appellant at work and appellant was very distraught and it appeared that she had been hit in the stomach, and she had many bruises on her body and arms.

The only other testimony relating to whether appellant substantially complied with the terms of the divorce decree by furnishing all of the requested items to appellee, dealt with an incident which occurred approximately a week after the divorce was final. The parties agreed that appellee came over to appellant's house uninvited and walked in, startling appellant, and against appellant's will proceeded to remove several items from the house. Specifically, appellee removed a nine-volume set of Civil War encyclopedias which had been awarded to him to maintain until the parties' grandson "was old enough to enjoy them", and some other books as well as some of his military papers. Both appellant and appellee are in further agreement that appellant indicated she would call the police, and in fact did call the police on this occasion. However, the parties' recollections of this scene then greatly diverge with appellant testifying that appellee shoved her around, she was bruised, scratched, and bleeding and was trying to get help. Bonita Marti testified that the next day appellant had a rather large bruise on one thigh or hip, her arm was badly bruised and skinned, there was a bruise on one side of her face that looked "horrible", and there were some marks on her arms, appearing as though somebody had grabbed her. Appellee thoroughly disputed this version of the incident.

■ Basically, this summarizes the evidence adduced at trial. While there clearly was some evidence that appellant did not substantially comply with the duties and responsibilities incumbent upon her under the divorce decree, sufficient to warrant the submission of the issue to the jury, we find that the evidence does not establish that appellant failed to substantially comply with the duties and obligations required of her under the property settlement agreement/judgment. Although reasonable minds could differ about the conclusion to be drawn from the evidence, we find that the elements of substantial compliance—performance of all important particulars, and any omissions or deviations from the agreement must be inadvert and unknowing and not due to bad faith—were established by the evidence. Accordingly, we hold that the jury's finding that appellant did not substantially comply with these duties and obligations is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Therefore, we sustain appellant's seventh point of error.

■ In appellant's fifth and sixth points of error she contends the trial court erred in rescinding, or partially rescinding, the property division rendered in the final divorce decree. Although an alternative request in appellee's counterclaim sought rescission of the property settlement provisions of the divorce decree, the trial court's judgment did not address this ground of relief other than to state that all other relief requested by either party and not expressly granted in the judgment was denied. The judgment which the trial court rendered is a take-nothing judgment on appellant's claim for damages for breach of the property settlement agreement/judg-

ment, and appellee's asserted affirmative defense of material breach. Therefore, although the practical effect of the trial court's judgment may have been to partially rescind that portion of the property settlement agreement/judgment which awarded appellant one-half of appellee's military retirement benefits, the trial court did not formally address appellee's counterclaim seeking rescission. For this reason, we overrule appellant's fifth and sixth points of error.

However, inasmuch as this cause is remanded for a new trial, in the interest of justice we shall discuss what we perceive to be the applicable law on retrial. Basically, appellee's major assertion is that the law of contracts applies in this suit to enforce the property settlement agreement/judgment, and therefore appellee's affirmative defense that appellant materially breached (failed to substantially comply with) the contract would excuse appellee's compliance therewith. Appellant's position on appeal is that the property settlement agreement/judgment is a final judgment and the law of judgments should apply in the instant case, thereby precluding appellee from raising this impermissible contractual defense so as to collaterally attack the divorce judgment. For reasons stated herein, we agree with appellant's position.

■ Property settlement agreements entered into by the parties incident to a divorce are given the effect of a contract. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984); *Francis v. Francis*, 412 S.W.2d 29, 33 (Tex.1967); *Ex Parte Jones*, 163 Tex. 513, 358 S.W.2d 370, 375 (1962). However, once the agreement has been approved by the court and incorporated into its judgment, "the agreement is no longer merely a contract between private individuals but is the judgment of the court." *Ex Parte Gorena*, 595 S.W.2d 841, 844 (Tex.1979). The fact that the judgment may be by consent of the parties does not render it of any less force and validity. *Pollard v. Steffens*, 161 Tex. 594, 343 S.W.2d 234, 239 (1961); *Wagner v. War-*

*nasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956).

■ Texas cases are in unison that contractual defenses which assail the validity of the underlying property settlement agreement/judgment between divorced parties are impermissible collateral attacks. *See Peddicord v. Peddicord*, 522 S.W.2d 266 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). In *Peddicord*, a suit to enforce a property settlement agreement/judgment, the defendant asserted the defenses of lack and failure of consideration, duress in executing the agreement, and lack of mental capacity to contract, all defenses pertaining to the *inception* of the property settlement agreement/judgment. The Court held that the trial court properly refused to allow the defendant to interpose contractual defenses, inasmuch as this would be to allow a collateral attack upon the judgment. *Id.* at 267.

In support of his theory that his affirmative defense in the instant case is proper, appellee places primary reliance on three cases, *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984), *Conner v. Bean*, 630 S.W.2d 697 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), and *Sorrels v. Sorrels*, 592 S.W.2d 692, 697 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.), which appellee contends all state that the *law of contracts* should govern a situation such as ours, and, therefore, events occurring subsequent to the entry of the divorce decree are not collateral attacks, and are permissible defenses.

In *McGoodwin*, at the time of the parties' divorce the court approved a property settlement agreement reached by the parties, and divided their property according to that agreement. The husband was awarded certain acreage and the wife was to receive a sum of money as consideration for the conveyance of her one-half interest in the land. The husband did not pay this consideration, but asserted full ownership, whereupon the wife brought a suit to subject the land to forced sale to satisfy her claim for the unpaid consideration. The issue to be decided was whether the di-

vorce decree which approved the property settlement agreement implied a vendor's lien in favor of the wife. Prior to deciding this issue in the affirmative, the Court held as follows:

> Correct resolution of the question presented requires first an understanding of the effect given a marital property settlement agreement by Texas law. *Such an agreement, though incorporated into a final divorce decree, is treated as a contract, and its legal force and its meaning are governed by the law of contracts, not by the law of judgments.* [Citations omitted.] The property settlement provision now considered is one that directs the payment of money as consideration for the conveyance of an interest in real estate. Its construction, therefore, is dictated by the law regarding contracts for the sale of land. [Emphasis added.]

*McGoodwin,* 671 S.W.2d at 882. Notwithstanding the above quoted language, we find that *McGoodwin* is not directly on point and therefore not controlling in the case at bar inasmuch as it dealt with the legal construction and effect of a property settlement agreement/judgment, and it did *not* deal with the situation wherein one party is attempting to raise subsequent defenses to the enforcement of that judgment.

The two Court of Appeals' cases upon which appellee relies both hold: 1) that actions to enforce a property settlement agreement/judgment are governed by the law of contracts rather than judgments, and that any defenses which attack the validity of the agreement at inception, execution or approval by the trial court of the divorce decree, are collateral attacks and are barred; but 2) that defenses which are grounded upon subsequent events are not barred. *See Sorrels,* 592 S.W.2d at 697; *Conner,* 630 S.W.2d at 699–700.

In *Sorrels,* the ex-husband sought to avoid liability for almost ten years of spousal support which had gone unpaid when the Sorrels remarried each other. *Sorrels,* 592 S.W.2d at 694. The trial court

granted the ex-husband's motion for summary judgment. *Id.* The Amarillo court of Appeals reversed, holding Mr. Sorrels could establish the defenses of waiver, limitations and payment, but that he had not done so as a matter of law so as to be entitled to a summary judgment. *Id.* at 697–98. The Court reasoned that *Peddicord* only forbade using contractual defenses that challenged the inception, execution and approval by the court of the property settlement agreement, and that any defense to the contract based upon the occurrence of events subsequent to that point was permissible. *Id.* at 697.

The only case to date which has followed *Sorrels* is *Conner v. Bean,* 630 S.W.2d at 697. The former husband in *Conner* sought to defend his non-payment of contractual alimony by raising several contractual defenses. *Conner,* 630 S.W.2d at 699. The appellate court refused to allow Mr. Conner to raise contractual defenses of no consideration and no acceptance of his offer since they are impermissible collateral attacks on the final judgment. *Id.* However, he *could* raise the condition subsequent of his wife's remarriage as a defense. *Id.* at 699–700. However, the ex-husband did not prevail because he failed to properly present the question of condition subsequent to the jury and court. *Id.* at 700.

█ There is no Texas case on all fours with our situation wherein one party sought to raise an affirmative defense which would have the effect of totally abrogating the prior final judgment of the trial court. We do not disagree that under the *Conner* and *Sorrels* cases *some* conditions subsequent to the property settlement agreement/judgment may result in permissible contractual defenses which may be asserted in an attempt to defeat a later suit to enforce the property settlement agreement/judgment. However, these defenses are directed toward explaining the non-performing party's inaction under certain provisions of the property settlement agreement/judgment, and even if found to be true, *the finality of the property settle-*

*ment agreement/judgment is not altered.* In the instant case, appellee seeks to totally abrogate the property settlement agreement/judgment by asserting the defense of material breach of contract. We will not extend the holdings of *Conner* and *Sorrels* so as to violate well-established legal principles regarding the finality of a judgment; therefore, we point out to the trial court on retrial that the specific affirmative defense which was raised by appellee in this case was an impermissible collateral attack on the finality of the property settlement agreement/judgment, and should not be allowed upon retrial.

The cause is reversed and remanded for a new trial. Costs of this appeal are assessed against appellee.