**Barbara (Hutchison) SPRADLEY, Appellant,**

v.

**Wayne HUTCHISON, Appellee.**

No. 2–88–220–CV.

Court of Appeals of Texas, Fort Worth.

April 4, 1990.

Rehearing Overruled April 25, 1990.

Atkins & McLarty, Bill Atkins, Arlington, for appellant.

Pierson, Baker & Ray, Grey Pierson, Arlington, Phillip Galyen, Bedford, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and LATTIMORE, JJ.

## OPINION

WEAVER, Chief Justice.

Barbara Spradley, appellant, appeals the trial court's order enforcing the terms of an agreed property settlement incorporated into a decree of divorce. This action was brought by appellee, appellant's former husband, Wayne Hutchison, to enforce terms of the agreement in the decree requiring appellant to pay appellee $26,356 representing 40% of the value of the community interest in the former community residence, the residence having been awarded to appellant. Appellant was allowed three years to make this payment. Upon the expiration of this period and appellant's failure to make payment, appellee brought this suit to collect the money due

under the decree. *See* TEX.FAM.CODE ANN. secs. 3.70 and 3.71(a) (Vernon Supp. 1990). During these proceedings, the trial court ordered appellant to pay the $26,356 due appellee under the agreed judgment into the registry of the court pending a final disposition of this action.

The record also shows that appellee failed to provide health insurance coverage for the children of the marriage, as the decree required, and that appellee claimed all income and tax benefits from a Florida real estate tax shelter, even though the decree awarded appellant a one-half interest in that property. The trial court's order appealed here awarded appellee $22,-840.21 plus interest, from the funds appellant had deposited into the court's registry. This amount represents the $26,356 due appellee under the decree, offset by: 1) medical expenses of the children incurred by appellant for which appellee should have provided insurance ($1,000.29); 2) one-half of the insurance premiums which appellee should have paid ($565.50); 3) the value of appellant's one-half interest in the Florida real estate ($1,250 + $100 interest); and 4) $600 of appellant's attorney's fees.

We affirm the trial court's order.

Appellant alleges four points of error by the trial court: 1) error in reforming the agreed property settlement (which had been incorporated into the divorce decree) and ordering appellant to pay the sum of $26,356 into the registry of the court upon penalty of the appointment of a receiver to sell the home; 2) error in awarding appellee $22,840.21 and interest thereon from the sum deposited into the court's registry; 3) error in failing to grant appellant's motion for judgment and failing to return to appellant the money placed in the court's registry, plus interest; and 4) error in failing to award appellant attorney's fees of $2,200.

We first dispose of points of error one and four, as they were not preserved for appellate review. Point one is multifarious, and we must break it down for analysis: a) the alleged reformation of the decree; and b) the order that appellant pay $26,356 into the trial court's registry.

As to the first portion, alleged reformation of the decree, we observe that appellant made no objection or complaint to the trial court, anywhere in the record, that the trial court was attempting, with its order of enforcement, to effect a modification of the settlement agreement in the divorce decree. Having failed to present this complaint to the trial court at any time, so that it might correct such error, if any, appellant may not make such complaint for the first time on appeal. *Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex.1988) (per curiam); TEX.R.APP.P. 52(a). However, we acknowledge that the trial court lacks the power to issue an order "that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce." TEX.FAM.CODE ANN. sec. 3.71(b) (Vernon Supp.1990). If the order appealed from here did so modify, it might well be fundamental error as beyond the trial court's jurisdiction. *See Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex.1982) (per curiam); *Texas Indus. Traffic League v. Railroad Comm'n*, 633 S.W.2d 821, 823 (Tex.1982) (per curiam).

Since this alleged modification could amount to fundamental error, we must determine whether the order actually so modified. We hold it did not. The order on appeal does not purport to change anything in the prior order. It merely grants the relief appellee requested, that appellant pay the amount she agreed to pay in the agreed judgment, offset by appellee's failure to comply with other portions of the judgment set forth above. No attempt is made by the order to alter the prior agreed judgment. Indeed, it seems to be simply an effort to accurately enforce that judgment. While the settlement agreement in the divorce decree awarded appellant a one-half interest in the Florida property, the order here simply provided an offset in appellee's recovery by the value of that one-half interest ($1,250). We hold that this disposition of that one-half interest does not change the substantive division of property approved in the divorce decree, because appellant realized that interest.

Thus, the trial court did not act beyond its power as proscribed by TEX.FAM.CODE ANN. sec. 3.71(b).

One arguable variance between the agreed judgment and the enforcement order relates to health insurance premiums paid by appellant to cover the children, which appellee had agreed to pay. While appellee was obligated to pay all of the children's health insurance costs, the order only offset appellee's recovery by one-half in regards to appellant's expense to cover the children ($565.50). However, the court also offset appellee's recovery for medical *expenses* incurred by these children ($1,000.29) which appellee had not agreed to pay, but should have provided insurance against. We hold that even this potential variance does not amount to a modification of the original decree, since, again, the order is not purporting to change the agreed judgment. At most, the court appears to be using this approach to best compensate appellant for the damages caused by appellee's failure to insure the children as he was required to do. As we discuss below, the trial court has some discretion to take such issues into account in determining the measure of damages the enforcing party is entitled to when both parties have disobeyed agreed judgment provisions. Because we hold the trial court's order on appeal does not modify the agreed property settlement, we overrule the first portion of point of error one.

■ As to the second part of point one, alleged error of the trial court in ordering the deposit of $26,356 into the registry of the court upon threat of placing the home into receivership, we again find appellant made no complaint in the record to the trial court. During the proceedings below, the trial court entered this order for the deposit of the money. The parties stipulated that prior to that order "the Court advised the parties that a receiver would be appointed to sell the property [unless appellant agreed to pay appellee the $26,356 due under the divorce decree]." The parties went on to stipulate that appellant "agreed" that she would arrange for a loan to pay the amount into the registry of the

court. There is no record that appellant ever objected to the payment into the court's registry, and indeed seems to have offered or accepted this arrangement as a compromise to the threatened receivership or to making immediate payment to appellee. The trial court apparently having made its ultimatum clear, appellant could have objected to the prospect of a receivership or to the payment of the money to appellee, and either objection may have preserved this point even if appellant proposed or agreed to this compromise. However, appellant failed to make these possible objections as well. Having failed to complain of this error, if any, on the record to the trial court, so that court might correct such error, appellant may not so complain for the first time on appeal. *Lemons,* 747 S.W.2d at 373; TEX.R.APP.P. 52(a). Point of error one is overruled.

■ In point of error four, alleged error in failing to award attorney's fees of $2,200, we find, again, appellant failed to preserve error. At the only hearing on the record in this case, the parties stipulated that appellant had incurred $2,200 in attorney's fees. Following the hearing, appellant filed her "Motion For Judgment" which included a simple request for "attorney's fees." In the order before us on appeal, the trial court awarded appellant attorney's fees of $600 as an offset to appellee's recovery. At no time after the order did appellant complain to the trial court, in any way, that the $600 award of attorney's fees was in error. Having failed to complain of this alleged error, if any, on the record to the trial court, so that such error might be corrected by that court, appellant may not so complain for the first time on appeal. *Lemons,* 747 S.W.2d at 373; TEX.R.APP.P. 52(a). Point of error four is overruled.

Points of error two and three allege essentially the same error. Point two alleges error in granting relief to appellee ($22,840.21), and point three alleges error in failing to grant appellant's motion for judgment asking that appellant take nothing (and that the money appellant placed in the registry of the court be returned to her).

These points turn on the issue of whether the trial court had authority to enforce the agreed judgment against appellant given that appellee had failed to comply with other portions of the agreed judgment. In other words, does the affirmative defense of breach of contract bar appellee's recovery as to other provisions of the agreed judgment?

Appellant does not dispute that she was obligated under the agreed judgment to pay appellee $26,356 for his community interest in the community residence, and that she failed to make this payment within the three-year period allowed in the agreed judgment. Her argument, rather, is that appellee cannot enforce this obligation because he also failed to comply with the agreed judgment. While appellee was required to provide health insurance for the children (as long as they were in school or until they became twenty-three years of age), he failed to provide that coverage. In addition, appellee kept the proceeds from a Florida tax shelter (real estate) and claimed all the tax benefits from that property, even though the agreed judgment provided that appellant owned a one-half interest in that property. Appellant argues that since appellee breached these portions of the agreed judgment, appellant is no longer required to fulfill her obligations under the judgment.

Appellant bases her argument on the theory that the property settlement approved by the trial court and incorporated into the divorce decree is merely a contract between the parties, and thus contractual defenses are available to her to avoid performance given appellee's breach. *Joseph v. PPG Indus.*, 674 S.W.2d 862, 867 (Tex. App.—Austin 1984, writ ref'd n.r.e.) ("one who has himself broken a contract cannot recover on it"); *Halbert v. Standley*, 488 S.W.2d 887, 889 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.). Appellant is correct that a property settlement agreement approved by a divorce court and incorporated into a decree of divorce is treated as a contract, and its legal force and meaning are governed by the law of contracts, not the law of judgments. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986). In *Allen*, the ex-husband was awarded his veterinary clinic in an agreed judgment, both parties assuming the real estate of the clinic had been transferred to the husband. *Id.* As in the case at bar, in a subsequent enforcement action the trial court had lost its plenary power over the judgment and only retained its inherent power to clarify or enforce the decree. *See McGehee v. Epley*, 661 S.W.2d 924, 926 (Tex.1983) (per curiam); TEX.R. CIV.P. 329b; TEX.FAM.CODE ANN. secs. 3.70–3.72 (Vernon Supp.1990). The trial court properly clarified the judgment by transferring the real estate to the husband to accurately reflect the true intent of the parties, as required by contract law. *Allen*, 717 S.W.2d at 312–13. None of the obligations in the judgment were abrogated by this action, as appellant seeks to do here.

In *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984), the supreme court found that although the settlement agreement incorporated in the divorce decree in that case did not grant a lien to the ex-wife, who was entitled under the agreement to payment for her community interest in the residence awarded to the ex-husband, an implied vendor's lien arose in wife's favor under the law of contracts. Appellant in the instant case relies on *Allen* and *McGoodwin* as authority that she is entitled to assert affirmative contractual defenses against appellee's claims under the agreement.

As we discussed in *Herbert v. Herbert*, 699 S.W.2d 717, 725–26 (Tex.App. —Fort Worth 1985), *rev'd on other grounds*, 754 S.W.2d 141 (Tex.1988), the propositions in *Allen* and *McGoodwin* that agreed judgments are governed by the rules of contract law goes primarily to interpreting the *meaning and effect* of the agreement. Those cases do not address situations where contractual defenses would abrogate the terms of the prior final judgment of the trial court. This is an important distinction given the unique character of an agreement incorporated into a judgment, as the supreme court has explained:

Despite the fact that a judgment has its genesis in an agreement between the parties, the judgment itself has an independent status. *Pollard v. Steffens,* 161 Tex. 594, 343 S.W.2d 234 (1961). Once the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court.

As this court stated in *Wagner v. Warnasch,* 156 Tex. 334, 339, 295 S.W.2d 890, 893 (1956), "The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties." Thus, in suits to enforce agreed judgments, parties may not raise contractual defenses because such defenses constitute impermissible collateral attacks on the prior judgments. *Peddicord v. Peddicord,* 522 S.W.2d 266 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.).

. . . .

"To deprive a court of power to execute its judgments is to impair its jurisdiction, and the general rule is that every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it...." [*Warnasch v. Wagner,* 291 S.W.2d 389, 394 (Tex.Civ.App.—Galveston), *rev'd,* 295 S.W.2d 890 (1956)].

*Ex parte Gorena,* 595 S.W.2d 841, 844 (Tex.1979). Because an agreed judgment has the same binding force and effect as a judgment resulting from a trial to the court or jury, such judgment is only subject to collateral attack if the court rendering the judgment lacked jurisdiction to render it. *Block v. Employers Cas. Co.,* 723 S.W.2d 173, 177 (Tex.App.—San Antonio 1986), *aff'd,* 744 S.W.2d 940 (Tex.1988). Thus, as a general rule, contractual defenses are impermissible collateral attacks upon the finality of a trial court's judgment.

██ Of course, the *terms* of an agreed judgment govern the rights of the parties to it, and a party may lose its rights under

the agreement if those rights are not properly exercised according to those terms. This is precisely what happened in *Giraud v. Reserve Realty Co.,* 94 S.W.2d 198, 199 (Tex.Civ.App.—San Antonio 1936, writ ref'd). The plaintiffs there sought to exercise an option to purchase real estate pursuant to a prior agreed judgment. *Id.* The defendants asserted that the plaintiffs failed to deposit a certain sum of money into the registry of the court, which was a prerequisite to exercising the option, and failed to do so within the time required by the agreed judgment. *Id.* Thus, the plaintiffs' rights under the judgment expired by the terms of the agreement. The assertion of this defense by the defendant was actually a defense of the plain meaning of the prior judgment, rather than a "contractual" defense, and was not an effort to abrogate any terms of that judgment. Appellant's reliance on this case is thus misplaced.

In *McGoodwin,* 671 S.W.2d at 882, discussed above, the supreme court upheld the trial court's holding that the ex-wife in that case had a vendor's lien by implication under the law of contracts to secure payment from the ex-husband for her community interest in the former community residence granted the husband in the agreed judgment. Again, we see this determination as merely an interpretation of the agreed judgment, and not an attempt to abrogate its provisions.

As appellee discusses, the courts of appeals have varied the application of the principle of finality of agreed judgments in the face of contractual defenses. In *Peddicord v. Peddicord,* 522 S.W.2d 266, 267 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.), that court held that the trial court there properly refused to allow the defendant to assert contractual defenses to an agreed judgment. The defenses the court held impermissible in that case included lack and failure of consideration, duress, and lack of mental capacity. *Id.* In *Sorrels v. Sorrels,* 592 S.W.2d 692, 697 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.), the court suggested in dicta that the rule in *Peddicord* only precluded contractual defenses regarding the inception, execution,

and approval of the court in challenging agreed judgments, and that contractual defenses that arise from events *subsequent* to that point are permissible. *See also Conner v. Bean*, 630 S.W.2d 697, 699–700 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (dicta indicating ex-husband could raise condition subsequent that former wife remarried, as a defense to the enforcement of an agreed judgment). As we indicated in *Herbert*, 699 S.W.2d at 726, we believe contractual defenses, including breach arising from subsequent events, are impermissible collateral attacks on a prior agreed judgment when such defenses abrogate the terms and obligations of the judgment itself. In *Herbert*, the ex-husband asserted the contractual defense of breach of contract to excuse his performance. *Id.* at 718. The ex-wife was entitled under the agreed judgment to one-half of the ex-husband's military retirement benefits, but the ex-wife had refused to turn over the ex-husband's personal property he was entitled to receive under the agreed judgment. While that case was disposed of on other grounds, we indicated that to allow this contractual defense would impermissibly abrogate the finality of the agreed judgment by altering the disposition of property in that judgment, as opposed to merely interpreting or enforcing its terms. *Id.*

The Austin Court of Appeals adopted our approach in *Giddings v. Giddings*, 701 S.W.2d 284, 287–89 (Tex.App.—Austin 1985, writ ref'd n.r.e.) (per curiam). In an earlier decision, that court refused to permit a former husband to avoid liability for delinquent child support payments, provided for in an agreed divorce decree, even though the former wife had breached her obligations under the agreement and that there had been a failure of consideration. *Akin v. Akin*, 417 S.W.2d 882, 884 (Tex. Civ.App.—Austin 1967, no writ). The *Giddings* court recognized the distinction made by some courts of appeals between contractual defenses regarding the inception and execution of an agreed judgment incorporated into a divorce decree, and defenses regarding events subsequent to the entry of the judgment. *Giddings*, 701 S.W.2d at 288–89. The court agreed with our balance between policies of interpretation of agreed judgments as contracts and the finality of judgments, concluding that contractual defenses, even those arising from conduct subsequent to inception and execution, are impermissible collateral attacks upon the prior agreed judgment. *Id.* However, they went on to hold that while contractual defenses arising from subsequent conduct are impermissible, such defenses may be raised and the trial court may consider them in determining the measure of recovery due the party enforcing the agreement. *Id.* at 289. We agree with the Austin court's reasoning, and we hold that issues raised as contractual defenses arising from conduct subsequent to the inception and execution of an agreed judgment should be considered by the trial court in determining the measure of damages to which the enforcing party is entitled. We believe this approach recognizes legitimate issues without abrogating the finality of the judgment provisions, and without the necessity of multiple suits to enforce agreed judgments.

We find this is precisely what the trial court did in its order enforcing the judgment in this case. Appellee, who brought this action to recover the $26,356 he was due under the judgment, recovered this amount reduced by an amount roughly corresponding to the value of appellee's own breach of the agreement in failing to provide health insurance for the children and claiming all benefits from a tax shelter jointly owned by both parties. While this reduction is not exactly precise (*i.e.*, reduction by only one-half of premiums paid by appellant, while appellee was obligated to pay all such premiums, yet a reduction for some actual medical expenses paid for which appellee was not liable) we hold that the trial court had some discretion in assessing how these facts should be considered in reducing appellee's recovery and how its order should be fashioned to effect a proper measure of damages. We hold this discretion was not abused. Because the trial court proceeded correctly in enforcing the prior agreed judgment, reducing appellee's recovery according to his

own breach of the agreed judgment, points of error two and three are overruled.

Judgment is affirmed.