**Rose Marion DAY, Appellant,**

v.

**Bobby Glenn DAY, Appellee.**

No. 07–94–0191–CV.

Court of Appeals of Texas,
Amarillo.

March 23, 1995.

Law Offices of Jack McClendon, Jack McClendon, Greg Teeter, Lubbock, for appellant.

**374**

Shelton and Jones, Travis D. Shelton, Dale Jones, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Rose Marion Day (Rose) asks whether limitations expired under § 3.70(c) of the Texas Family Code, thus preventing her from enforcing and depriving the trial court of jurisdiction to enforce a division of property specified in a divorce decree. The trial court answered yes and dismissed the motion. We reverse.

## FACTS

On February 3, 1989, the trial court signed a final judgment (the Decree) resolving a property division dispute incident to Rose's divorce from Bobby Glenn Day (Bobby). Incorporated therein by reference was the property settlement agreement (Agreement) executed by the two parties. Under paragraph 2.021, it awarded Rose "an estate for the term of five years or until she remarries [in property described under paragraph 2.021A] ... as her sole and separate property." It further divested Bobby of "all right, title, interest, and claims in and to such property until the expiration of five years or until Rose ... remarries." Once either of those happenstances transpired, the property "revert[ed] to Bobby ... as his sole and separate property."

Yet, Rose's five year term could "become a perpetual and fee simple award ... if during the five years following the final decree" Bobby committed various specified acts.[1] Those acts, according to the document, "shall be conditions of the reversion to Bobby ... after the five year term." Additionally, "the failure to fulfill the conditions ... shall allow Rose ... the right to foreclose a lien upon the property known as Richardson Farm and the Polster Farm, which is hereby granted and conveyed." Finally, under the heading "Description" at paragraph 2.021A, one found a description of the property in question, that is:

All properties, including income therefrom, and proceeds of notes receivables payable to Day & Co., Inc.... (hereinafter referred to as the Property of Res)

The parties also attached two "schedules" to the Decree. That marked "Schedule A" described the division given Rose as her sole and separate estate "provided that her title and powers over the stock and assets of Day & Company, Inc. [was] limited to that of a tenant for a term of years or until remarriage." Paragraph "1" of Schedule A recapitulated the grant as "[t]he use and profits of all assets except minerals of Day & Company, Inc., and the stock thereof, for a term of five ... years, or until Rose ... remarries, whichever first occurs." Schedule B itemized the property awarded Bobby as his "sole and separate property and estate."

As could be expected, Rose alleged that one or more of the "conditions" to reversion occurred within the five year term. The record, however, does not reflect the dates on which they supposedly occurred. Nevertheless, she waited until February 3, 1994, to file her motion to "Enforce Property Award." She also secured a temporary restraining order preventing Bobby from "representing himself as owner of Day and Co., Inc. or from taking any action with regard to the property belonging to Day and Co., Inc."

In response, Bobby argued that the motion was several years too late. Because the property in question was in existence when the judgment was signed, he continued, any relief his ex-wife desired had to have been requested within two years after the Decree became final. Resting upon the expiration of limitations, he then attacked the trial court's jurisdiction "to hear the subject matter of the motion." Rose's sole option, he concluded, was to file a "new lawsuit or some other similar action." The trial court agreed with him and dismissed the motion.

## POINT OF ERROR ONE

Rose protests the court's decision in one point of error. She notes that § 3.70 of the Family Code addresses two categories of claims. The first involves property in exis-

---

1. What the acts were are irrelevant to this appeal. So, they will not be itemized.

tence at the time the divorce decree issued, the second, future property not in existence at that time. Next, she concedes that her motion below "was filed to enforce an award of property that existed at the time of the Decree."[2] Yet, because she was not entitled to a "perpetual and fee simple interest in the property," the limitations applicable to the second category of property controlled the situation at hand. If correct, she had two years within which to sue "after the right to the property matured or accrued."

### a. Proceeding to Enforce Property Award

Subchapter D, of chapter three of the Texas Family Code deals with the enforcement of property awards incorporated within final divorce decrees. Through it, the legislature codified not only the inherent power of a trial court to enforce and clarify its judgments, *Tex.Fam.Code Ann.* § 3.71(a) (Vernon 1993); *see Greiner v. Jameson,* 865 S.W.2d 493, 498–99 (Tex.App.—Dallas 1993, writ denied) (providing an overview of the court's inherent power to enforce and clarify judgments), but also the prohibition against substantively modifying, amending, or altering them 30 days after they became final. *Id.; Pate v. Pate,* 874 S.W.2d 186, 189 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Pierce v. Pierce,* 850 S.W.2d 675, 678–79 (Tex.App.— El Paso 1993, writ denied); *Spradley v. Hutchison,* 787 S.W.2d 214, 216–17 (Tex. App.—Fort Worth 1990, writ denied).

The subchapter also effected the time period accorded a party to solicit judicial aid in enforcing and clarifying final orders within the ambit of § 3.71 of the Family Code. Prior to the enactment of § 3.71, a party had ten years within which to petition for relief. *Ex parte Goad,* 690 S.W.2d 894, 896 (Tex. 1985). That window was reduced, in 1983, to two years. *Tex.Fam.Code Ann.* § 3.70(c) (Vernon 1993). When the two years began to run, however, depended upon the type of property in dispute. For instance, proceedings involving tangible personalty existing at the time of judgment had to be initiated within two years from the date the judgment was signed or became final after appeal. *Id.*

On the other hand, someone soliciting the enforcement of an order encompassing "future property not in existence at the time of the original decree," had to petition within two years after the right to the property matured or accrued or after the decree became final, whichever was later. *Id.*

Therein lies the rub; which provision of § 3.70(c) applies to the claims at bar. The answer depends upon the nature of the property involved and the character of the proceeding below.

### b. Nature of Property Involved

Upon reviewing the record and reading the property settlement agreement, we conclude that the property and rights made subject of Rose's motion were not of the type encompassed by the limitation provision used below. On the contrary, the two year provision invoked by Bobby and adopted by the trial court involved motions to enforce the division of tangible personalty. *Tex.Fam.Code Ann.* § 3.70(c). Here, Rose sought the enforcement of an intangible property right maturing in the future.

No one disputes that the Day & Co. assets described in the 1989 decree actually existed at the time of judgment. Yet, one must avoid confusing those assets with the "property" awarded under the Decree. Indeed, the items described under paragraph 2.021A differed from the property, or rights *in those assets,* accorded Rose in paragraph 2.021. *See 1 Restatement of the Law of Property, Introduction and Freehold Estates,* Chap. 1 (1936) (discussing the distinction between "property" as describing a thing or item and "property" as denoting legal relationships with respect to a thing); 59 *Tex.Jur.3d Property* § 1 (1988) (discussing the same). The latter paragraph actually created a legal relationship between Rose, Bobby and the Day & Co. assets by bestowing upon her an "estate for the term of five years." During that period Rose could exercise the indicia of ownership over the assets. Yet, in time, her authority over and legal relationship in them would end unless a legal relationship created by a second provision in paragraph 2.021

---

**2.** We accept this concession and forego comment on its accuracy.

came to fruition. The second provision served, in effect, to transfer all existing and prospective rights of Bobby in the assets to Rose upon the happening of the aforementioned conditions.

Invoking illustrations propounded in first year property law, we liken the property here at issue, that is, the legal relationships created by the Agreement, to a bundle of sticks.[3] Each stick equated an interest in property, while together they comprised unfettered ownership. The 1989 Decree divided the sticks among Rose and Bobby. Those representing the right to present possession of limited duration were culled and given to Rose. Those indicative of the right to future possession and unfettered control were handed to Bobby. However, one was left. In awarding it to Rose, the agreement gave her an interest in exercising unfettered and infinite control of the assets sometime in the future. Whether that control came to fruition was dependant upon Bobby's conduct.

■ Thus, the right to possess the entire bundle of sticks, that is, fee ownership, was akin to a contingent future interest. As such, it constituted a chose-in-action, *Citizens State Bank v. O'Leary*, 140 Tex. 345, 167 S.W.2d 719, 721 (1942) (describing a chose-in-action as a property right emanating from an agreement to pay money upon the happening of a contingency); *Blacks Law Dictionary* 219 5th ed. 1979) (defining a chose-in-action as personalty to which the owner has a right of possession in future, or a right to immediate possession, wrongfully withheld). A chose-in-action is property, that is, a thing, classified as intangible. 59 *Tex.Jur.3d Property* § 2; *In re Newman*, 993 F.2d 90, 93 (5th Cir.1993) (defining as general intangibles, for purposes of the U.C.C., "a bundle of rights such as those inherent in a franchise, a chose in action, a copyright, or an annuity"). Relating to future interests and being intangible, the chose-in-action did not come within the portion of § 3.70(c) pertaining to tangible personalty. Instead, it fell within the category of future property, maturing post-judgment and controlled by the second § 3.70(c) limitations provision.

### c. The Nature of the Relief

We next conclude that the proceeding initiated below was one to enforce a division of property awarded in a divorce decree. Simply put, Rose sought to convince the court that the contingencies expressed in paragraph 2.021 of the settlement agreement had occurred. If correct, her unfettered ownership of the property matured. If incorrect, then Bobby enjoyed exclusive ownership. In either case, the result was not only provided for but dictated by the Agreement as incorporated into the Decree, and Rose sought only to enforce the express terms of the Agreement.

That the trial court had to interpret the Agreement if ambiguous, conduct an evidentiary hearing to determine if the contingencies actually occurred or order Bobby to deliver the assets mattered not. Once commenced, "the proceeding shall be as in civil cases generally." *Tex.Fam.Code Ann.* § 3.70(b). The rules of procedure applicable to it were the very same "applicable to the filing of an original lawsuit." *Id.* Implicit within these provisions rested the legislature's intent to treat a subchapter D proceeding as any other civil suit and accord the trial judge entertaining such a proceeding like jurisdiction, save for various restrictions pertaining to trial by jury and the scope of relief. *See e.g. Tex.Fam.Code Ann.* § 3.70(e) (denying the parties a jury trial). So, the court had the power to do that which Bobby protested. Moreover, the proceeding was tantamount to the "new lawsuit" which he contended his ex-wife had to bring.

■ Next, that the court was enforcing a contract, as argued by Bobby, also lacked import. By incorporating the contract into the Decree, the parties and court rendered it part of the Decree. Though subject to the law of contracts in its interpretation, *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986), it was, nevertheless, a judgment of the court and subject to like enforcement. *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex.1979); *Spradley v. Hutchison*, 787 S.W.2d at 218–19. If Rose desired to enforce the Decree, and the contract incorporated therein, under the legisla-

---

**3.** According due recognition to Prof. B. Kramer for the use of his example.

tive grant manifest in §§ 3.70 *et seq.* of the Family Code, the court could not deprive her of that opportunity.

Finally, that Day & Co., Inc. was not a party to the decree or proceeding below was also inconsequential for purposes of the current dispute. This alleged defect, which pertained to jurisdiction over the person as opposed to the subject matter, was not brought to the court's attention below. Given that Rule 39(b) of the Texas Rules of Civil Procedure may provide the appropriate answer, we leave the matter for the trial court to first consider.

### CONCLUSION

Given the nature of the claims involved and the relief requested, we conclude that Rose was entitled to move for help within two years of the date her fee interest in the Day & Co. assets matured, that date being the day on which one of the conditions occurred. In so holding, we reject Rose's contention that she had no right to sue until her estate for five years expired. The Agreement, though less than clear, had no such delaying feature. It simply stated that her initial interest in the assets became perpetual and fee simple if Bobby performed any of the prohibited acts. The instant he acted improperly, her claim to fee accrued.

Moreover, this decision is not a comment upon the ultimate merits of either parties' substantive claims and defenses. Nor does it attempt to suggest whether the Agreement and Decree lawfully divested Day & Co. of it rights, if any, in the property at issue. Those matters are left to the trial court. Accordingly, we sustain Point of Error One, reverse the order dismissing the Motion to Enforce Property Award and remand the cause for further proceedings.