NO. 07-02-0285-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 25, 2004
_____

IN THE MATTER OF THE MARRIAGE OF LAURIE
LYNNETTE SORUM CLARK AND JAMES LEE CLARK
_____

FROM THE 221ST DISTRICT COURT OF MONTGOMERY COUNTY;

NO. 98-07-02427-CV; HON. KATHLEEN STONE, PRESIDING
_____

*Memorandum Opinion*
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Laurie Lynnette Sorum Clark appeals from a judgment awarding her ex-husband James Lee Clark $18,000. The latter represents the sum of money he allegedly overpaid her under the terms of a promissory note. The note was executed by James pursuant to the terms of an "Agreement Incident to Divorce." Of the 11 issues now asserted by Laurie on appeal, we need only address that which questions whether the trial court had the jurisdiction to modify the "Agreement Incident to Divorce" and whether the jury's finding that James owed her nothing enjoyed factually sufficient evidentiary support. We reverse and remand.

### Background

On August 8, 1988, the district court for the 257ᵗʰ Judicial District of Harris County signed a decree ending the marriage of James and Laurie. In it, the trial court acknowledged that "the parties ha[d] consented to [the decree's] . . . terms . . . and stipulated it is a contract." So too did the court find that the litigants "entered into an Agreement Incident to Divorce" (Agreement). The latter was then approved by the court and expressly made part of the decree.

Next, James and Laurie signed the decree, expressing that they both "approved and consented to" its provisions. The provision underlying the dispute at bar appears after the heading "Promissory Note." There the parties agreed and the court

> . . . ORDERED . . . that for the purpose of the just and right division of the property, that JAMES . . . shall execute and deliver to LAURIE . . . a Promissory Note in the face amount of Two Hundred Forty Thousand and No/100 Dollars . . . of even date herewith bearing interest at seven percent . . . and in the event of default at prime as quoted by First Interstate Memorial plus 2 points and providing for one hundred nineteen . . . monthly payments of Two Thousand . . . Dollars . . . each and a final payment of all unpaid principal and interest due on the One Hundred and Twentieth . . . month immediately following the date of the Note . . . . If Respondent [James] defaults on the payment of this Promissory Note, then [his] claim to a portion of the sales proceeds from the Homestead . . . shall be extinguished without credit . . . .

A virtually identical provision appeared in the Agreement. However, rather than being ordered to execute the promissory note, James simply agreed to sign and deliver it to Laurie. The instrument which he signed and delivered designated Laurie as payee, mentioned the principal amount to be "Two hundred Forty Thousand and No/100 Dollars ($240,000)," provided for "Annual Interest . . . on Unpaid Principal from Date" at "7%," alluded to "119 equal payments of $2000" and one final payment "of all unpaid principal

2

and interest due and owing," and obligated James "to pay to the order of Payee . . . according to the terms of payment the principal amount plus interest at the rates stated . . ." therein. For purposes of this opinion, we refer to this instrument as the Note.

It is undisputed that James was aware of the manner in which the parties described his promissory obligation in 1) the Note itself, 2) the Agreement, and 3) the divorce decree when he signed each document. Similarly clear is that he made payments which totaled $258,000. Problem arose, however, when Laurie indicated that he owed her an additional sum exceeding $100,000. The latter allegedly represented the outstanding principal and seven percent interest which accumulated thereon through the years. James refused to pay it. He argued that despite the terms of the Note, the Agreement, and the divorce decree (all of which he signed), the parties had actually agreed during negotiations prior to their divorce that interest would not be paid. So, in his estimation, the duty imposed upon him under the Note purportedly consisted of paying 120 installments of $2000 each for a total of $240,000.

To effectuate his supposed understanding, James initiated suit in the district court for the 221st Judicial District for Montgomery County to reform the Note and obtain a declaration that the debt represented by it was satisfied. Laurie counterclaimed seeking what she believed to be the arrearage and an order quieting title of the homestead (*i.e.* declaring that James no longer had an interest in the proceeds from the sale of the homestead since he breached his promise to pay the Note).

The parties tried their dispute to a jury. The latter concluded that James had been fraudulently induced to sign the promissory note.[1] However, it also found that 1) James had sufficient knowledge of facts before July 1, 1994, that would have required a reasonably prudent person "to make inquiry that, if pursued, would lead him to discover that Laurie . . . intended him to pay seven percent interest on the promissory note," and 2) no balance was due from him to Laurie. Thereafter, the 221st District Court entered judgment declaring that Laurie take nothing from James. So too did it order Laurie to pay James $18,000 (the sum allegedly representing overpayment of his debt) plus attorney's fees, court costs, and interest.

## Issue One - Jurisdiction

In her first issue, Laurie argues that the trial court had no jurisdiction to "eliminate the seven-percent interest from the property division in the 1988 Agreed Decree." We agree and sustain the issue.

Statute prohibits a court from amending, modifying, altering, or changing the division of property made or approved in a decree of divorce. TEX. FAM. CODE ANN. §9.007(a) (Vernon 1998). In other words, while orders may issue which are necessary to effectuate or clarify the court's prior division of property, the court may not change the division once its plenary jurisdiction over the decree expires. *In re Reinauer*, 946 S.W.2d 853, 861 (Tex. App.–Amarillo 1997, pet. denied); *Spradley v. Hutchison*, 787 S.W.2d 214, 218 (Tex. App.–Fort Worth 1990, writ denied); *see* TEX. FAM. CODE ANN. §9.007(b) (Vernon 1998)

---

[1]We do not address whether James was party to fraud upon the 257th Judicial District Court given the apparent misrepresentation to that court regarding the terms of the Note.

4

(stating that an order changing the actual, substantive division of property approved in a final decree "is beyond the power of the divorce court" and "is unenforceable").

Here, the divorce decree directed James to execute a promissory note in the principal amount of $240,000 and bearing interest at seven percent per annum. The duty was imposed upon him, as stated in the judgment, for the purpose of securing a just division of the marital estate. Furthermore, that the plenary jurisdiction of the 257th Judicial District Court over its August 1988 judgment expired long before James sued in the 221st Judicial District Court is beyond conjecture.[2] So, both the decree and the obligations imposed therein to secure an appropriate division of the marital estate were final and immutable when James petitioned a neighboring district court for relief. And, given that the decree was final and immutable, the court which he petitioned had no power to alter them, even if he believed their terms differed from an agreement purportedly reached while negotiating the division of the marital estate. *See Callaway v. Elliott*, 396 S.W.2d 242, 244-45 (Tex. App.–Tyler 1965, writ dism'd w.o.j.) (holding that an attempt to change the property division approved by the court and to which the parties agreed constituted an impermissible collateral attack upon the judgment, even though the ex-husband argued that he never agreed to transfer the property described in the divorce decree).

We acknowledge James' argument that he is simply attacking the Note as opposed to the divorce decree and, thus, his efforts do not constitute an attempt to change that decree. Yet, one cannot escape from the fact that the terms of the Note (including those

---

[2]That a substantial difference exists between the payment of $240,000 over ten years without interest and the payment of $240,000 over ten years with interest at seven percent per annum is similarly beyond conjecture. Thus, insulating James from the duty to pay such interest would indeed have impact upon the previous division of the marital estate by the 257th Judicial District Court.

5

pertaining to the payment of interest) and its execution were mandated by the decree. So, to relieve him from performing an aspect of the Note mandated by the decree is nothing short of relieving James from an obligation imposed by the decree. And, logically, if he is relieved from performing an obligation imposed by the decree, then the decree has, for all practical purposes, been changed. Irrespective of the legal semantics used to frame the result attained below, the outcome is one which we cannot countenance given §9.007 of the Family Code, *Reinauer*, *Spradley*, and *Callaway*. Simply put, James cannot do indirectly that which he cannot do directly.

In sum, the trial court at bar lacked jurisdiction to enter a judgment relieving James from paying the interest mandated by the divorce decree. And, in doing so, it erred. Furthermore, the error is harmful since it permitted the jury to calculate the arrearage due Laurie via a formula other than that imposed by the decree through the Note. Indeed, unless the jury was permitted to calculate the arrearage via a formula relieving James from paying interest, the jury's determination that he owed Laurie "0.00" would lack, at the very least, factually sufficient evidentiary support. This is so because while he made payments, no evidence illustrates that the $258,000 paid equals principal of $240,000 plus interest accruing at seven percent on the outstanding balance over ten years. And, although question was raised below regarding whether Laurie's expert accurately credited James with certain payments (which could affect the amount of interest payable), the overwhelming weight of evidence depicted that a substantial balance remained outstanding at the end of the ten-year term. Similarly, the trial court's decision to award James $18,000 cannot be justified unless one concludes that he had no duty to pay interest.

6

Consequently, the error at issue permeates not only the jury's findings but also the trial court's judgment.[3]

Our disposition of issue one relieves us from having to consider the others asserted. Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings.


Brian Quinn
Justice

---

[3]Under her ninth issue, Laurie argues that the trial court erred in refusing to quiet title to the marital homestead. This is allegedly so because James defaulted in paying the Note. Thus, she asks us to rule "as a matter of law," that he forfeited his interest in the proceeds from the sale of the homestead. We overrule the issue as being improperly briefed. Laurie cited to no authority as required by Rule 38.1(h) of the Texas Rules of Appellate Procedure. *See Plummer v. Reeves,* 93 S.W.3d 930, 931 (Tex. App.--Amarillo 2003, pet. denied) (holding that one must accompany argument with citation to authority). Furthermore, no one has provided us with either argument or authority illustrating whether or not an attempt to secure a judicial declaration that one need not perform a purported contractual duty before time to perform has arrived constitutes a default "as a matter of law." And, we are under no duty to create or find either for the litigants.