NO. 07-02-0285-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



FEBRUARY 25, 2004


______________________________



IN THE MATTER OF THE MARRIAGE OF LAURIE 


LYNNETTE SORUM CLARK AND JAMES LEE CLARK


_________________________________



FROM THE 221ST DISTRICT COURT OF MONTGOMERY COUNTY;



NO. 98-07-02427-CV; HON. KATHLEEN STONE, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

 Laurie Lynnette Sorum Clark appeals from a judgment awarding her ex-husband
James Lee Clark $18,000. The latter represents the sum of money he allegedly overpaid
her under the terms of a promissory note. The note was executed by James pursuant to
the terms of an "Agreement Incident to Divorce." Of the 11 issues now asserted by Laurie
on appeal, we need only address that which questions whether the trial court had the
jurisdiction to modify the "Agreement Incident to Divorce" and whether the jury's finding that
James owed her nothing enjoyed factually sufficient evidentiary support. We reverse and
remand.





Background


 On August 8, 1988, the district court for the 257th Judicial District of Harris County 
signed a decree ending the marriage of James and Laurie. In it, the trial court 
acknowledged that "the parties ha[d] consented to [the decree's] . . . terms . . . and
stipulated it is a contract." So too did the court find that the litigants "entered into an
Agreement Incident to Divorce" (Agreement). The latter was then approved by the court
and expressly made part of the decree. 

 Next, James and Laurie signed the decree, expressing that they both "approved and
consented to" its provisions. The provision underlying the dispute at bar appears after the
heading "Promissory Note." There the parties agreed and the court 

 . . . ORDERED . . . that for the purpose of the just and right division of the
property, that JAMES . . . shall execute and deliver to LAURIE . . . a
Promissory Note in the face amount of Two Hundred Forty Thousand and
No/100 Dollars . . . of even date herewith bearing interest at seven percent
. . . and in the event of default at prime as quoted by First Interstate Memorial
plus 2 points and providing for one hundred nineteen . . . monthly payments
of Two Thousand . . . Dollars . . . each and a final payment of all unpaid
principal and interest due on the One Hundred and Twentieth . . . month
immediately following the date of the Note . . . . If Respondent [James]
defaults on the payment of this Promissory Note, then [his] claim to a portion
of the sales proceeds from the Homestead . . . shall be extinguished without
credit . . . . 


A virtually identical provision appeared in the Agreement. However, rather than being
ordered to execute the promissory note, James simply agreed to sign and deliver it to
Laurie. The instrument which he signed and delivered designated Laurie as payee,
mentioned the principal amount to be "Two hundred Forty Thousand and No/100 Dollars
($240,000)," provided for "Annual Interest . . . on Unpaid Principal from Date" at "7%,"
alluded to "119 equal payments of $2000" and one final payment "of all unpaid principal
and interest due and owing," and obligated James "to pay to the order of Payee . . .
according to the terms of payment the principal amount plus interest at the rates stated . . ."
therein. For purposes of this opinion, we refer to this instrument as the Note. 

 It is undisputed that James was aware of the manner in which the parties described
his promissory obligation in 1) the Note itself, 2) the Agreement, and 3) the divorce decree
when he signed each document. Similarly clear is that he made payments which totaled
$258,000. Problem arose, however, when Laurie indicated that he owed her an additional
sum exceeding $100,000. The latter allegedly represented the outstanding principal and
seven percent interest which accumulated thereon through the years. James refused to
pay it. He argued that despite the terms of the Note, the Agreement, and the divorce
decree (all of which he signed), the parties had actually agreed during negotiations prior
to their divorce that interest would not be paid. So, in his estimation, the duty imposed
upon him under the Note purportedly consisted of paying 120 installments of $2000 each
for a total of $240,000. 

 To effectuate his supposed understanding, James initiated suit in the district court
for the 221st Judicial District for Montgomery County to reform the Note and obtain a
declaration that the debt represented by it was satisfied. Laurie counterclaimed seeking
what she believed to be the arrearage and an order quieting title of the homestead (i.e.
declaring that James no longer had an interest in the proceeds from the sale of the
homestead since he breached his promise to pay the Note).

 The parties tried their dispute to a jury. The latter concluded that James had been
fraudulently induced to sign the promissory note. (1) However, it also found that 1) James 
had sufficient knowledge of facts before July 1, 1994, that would have required a
reasonably prudent person "to make inquiry that, if pursued, would lead him to discover that
Laurie . . . intended him to pay seven percent interest on the promissory note," and 2) no
balance was due from him to Laurie. Thereafter, the 221st District Court entered judgment
declaring that Laurie take nothing from James. So too did it order Laurie to pay James
$18,000 (the sum allegedly representing overpayment of his debt) plus attorney's fees,
court costs, and interest. 

Issue One - Jurisdiction 


 In her first issue, Laurie argues that the trial court had no jurisdiction to "eliminate
the seven-percent interest from the property division in the 1988 Agreed Decree." We
agree and sustain the issue. 

 Statute prohibits a court from amending, modifying, altering, or changing the division
of property made or approved in a decree of divorce. Tex. Fam. Code Ann. §9.007(a)
(Vernon 1998). In other words, while orders may issue which are necessary to effectuate
or clarify the court's prior division of property, the court may not change the division once
its plenary jurisdiction over the decree expires. In re Reinauer, 946 S.W.2d 853, 861 (Tex.
App.-Amarillo 1997, pet. denied); Spradley v. Hutchison, 787 S.W.2d 214, 218 (Tex.
App.-Fort Worth 1990, writ denied); see Tex. Fam. Code Ann. §9.007(b) (Vernon 1998)
(stating that an order changing the actual, substantive division of property approved in a
final decree "is beyond the power of the divorce court" and "is unenforceable").

 Here, the divorce decree directed James to execute a promissory note in the
principal amount of $240,000 and bearing interest at seven percent per annum. The duty
was imposed upon him, as stated in the judgment, for the purpose of securing a just
division of the marital estate. Furthermore, that the plenary jurisdiction of the 257th Judicial
District Court over its August 1988 judgment expired long before James sued in the 221st
Judicial District Court is beyond conjecture. (2) So, both the decree and the obligations
imposed therein to secure an appropriate division of the marital estate were final and
immutable when James petitioned a neighboring district court for relief. And, given that the
decree was final and immutable, the court which he petitioned had no power to alter them,
even if he believed their terms differed from an agreement purportedly reached while
negotiating the division of the marital estate. See Callaway v. Elliott, 396 S.W.2d 242, 244-45 (Tex. App.-Tyler 1965, writ dism'd w.o.j.) (holding that an attempt to change the
property division approved by the court and to which the parties agreed constituted an
impermissible collateral attack upon the judgment, even though the ex-husband argued that
he never agreed to transfer the property described in the divorce decree).

 We acknowledge James' argument that he is simply attacking the Note as opposed
to the divorce decree and, thus, his efforts do not constitute an attempt to change that
decree. Yet, one cannot escape from the fact that the terms of the Note (including those
pertaining to the payment of interest) and its execution were mandated by the decree. So,
to relieve him from performing an aspect of the Note mandated by the decree is nothing
short of relieving James from an obligation imposed by the decree. And, logically, if he is
relieved from performing an obligation imposed by the decree, then the decree has, for all
practical purposes, been changed. Irrespective of the legal semantics used to frame the
result attained below, the outcome is one which we cannot countenance given §9.007 of
the Family Code, Reinauer, Spradley, and Callaway. Simply put, James cannot do
indirectly that which he cannot do directly.

 In sum, the trial court at bar lacked jurisdiction to enter a judgment relieving James
from paying the interest mandated by the divorce decree. And, in doing so, it erred. 
Furthermore, the error is harmful since it permitted the jury to calculate the arrearage due
Laurie via a formula other than that imposed by the decree through the Note. Indeed,
unless the jury was permitted to calculate the arrearage via a formula relieving James from
paying interest, the jury's determination that he owed Laurie "0.00" would lack, at the very
least, factually sufficient evidentiary support. This is so because while he made payments,
no evidence illustrates that the $258,000 paid equals principal of $240,000 plus interest
accruing at seven percent on the outstanding balance over ten years. And, although
question was raised below regarding whether Laurie's expert accurately credited James
with certain payments (which could affect the amount of interest payable), the
overwhelming weight of evidence depicted that a substantial balance remained outstanding
at the end of the ten-year term. Similarly, the trial court's decision to award James $18,000
cannot be justified unless one concludes that he had no duty to pay interest. 
Consequently, the error at issue permeates not only the jury's findings but also the trial
court's judgment. (3)

 Our disposition of issue one relieves us from having to consider the others asserted. 
Accordingly, we reverse the judgment of the trial court and remand the cause for further
proceedings. 

 

 

 Brian Quinn

 Justice
1. We do not address whether James was party to fraud upon the 257th Judicial District Court given the
apparent misrepresentation to that court regarding the terms of the Note.
2. That a substantial difference exists between the payment of $240,000 over ten years without interest
and the payment of $240,000 over ten years with interest at seven percent per annum is similarly beyond
conjecture. Thus, insulating James from the duty to pay such interest would indeed have impact upon the
previous division of the marital estate by the 257th Judicial District Court.
3. Under her ninth issue, Laurie argues that the trial court erred in refusing to quiet title to the marital
homestead. This is allegedly so because James defaulted in paying the Note. Thus, she asks us to rule "as
a matter of law," that he forfeited his interest in the proceeds from the sale of the homestead. We overrule
the issue as being improperly briefed. Laurie cited to no authority as required by Rule 38.1(h) of the Texas
Rules of Appellate Procedure. See Plummer v. Reeves, 93 S.W.3d 930, 931 (Tex. App.--Amarillo 2003, pet.
denied) (holding that one must accompany argument with citation to authority). Furthermore, no one has
provided us with either argument or authority illustrating whether or not an attempt to secure a judicial
declaration that one need not perform a purported contractual duty before time to perform has arrived
constitutes a default "as a matter of law." And, we are under no duty to create or find either for the litigants.